## CHAPMAN et al. v. KENDALL.

No. 19011. Opinion Filed Dec. 10, 1929.

Rehearing Denied Sept. 23, 1930.

John Rogers, for plaintiffs in error.

C. M. Oakes and Pryor & Stokes, for defendant in error.

HERR, C. This is an action originally brought in the district court of Hughes county by Edward Kendall against J. O. Chapman, as executor of the estate of Phillip A. Chapman, deceased, and others as heirs at law of said deceased, to cancel an oil and gas lease in and to 80 acres of land located in said county.

Plaintiff, in his petition, asks cancellation on two distinct grounds and sets them forth in two separate causes of action. In his first cause of action, he alleges that he is an innocent purchaser; that he purchased the premises from one Wm. Johnson, without notice, either actual or constructive, of the existence of said lease. The second cause of action is predicated on the breach of an implied covenant to develop.

The trial court found for plaintiff and entered a decree quieting title in him and canceling the oil and gas lease. Defendants appeal and assign as error that the judgment is not sustained by the evidence.

It appears from the evidence that, on the 14th day of November, 1916. P. A. Chapman, since deceased, then being the owner of the premises, conveyed the same to Wm. Johnson. In his deed of conveyance, however, Chapman expressly reserved a paid up oil and gas lease.

This lease does not appear to have been in existence at the time of the execution of the deed, but later, and on the 26th day of December, 1916, Johnson and his wife executed to Chapman a 25-year oil and gas lease in and to said premises. This lease, it seems, was executed in accordance with an agreement entered into between the parties at the time the contract of purchase was entered into.

On the 2nd day of November, 1918, Johnson conveyed the premises by warranty deed to Edward Kendall, plaintiff herein. It is established by the evidence that at the time of the conveyance from Johnson to plaintiff neither the deed from Chapman to Johnson nor the oil and gas lease from Johnson to Chapman had been placed of record, but the same were at said time in escrow in the First National Bank of Holdenville. The purchase price of the premises, as between Chapman and Johnson, does not appear from the record, but it does appear that at the time Johnson conveyed to Kendall, he, Johnson, still owed Chapman $900. on the purchase price. This amount Kendall, he, Johnson, still owed Chapman $900 man, and, in addition thereto, paid Johnson $600, making a total purchase price to Kendall of $1,500.

It is the contention of defendants that, notwithstanding the fact that neither the deed from Chapman to Johnson nor the oil and gas lease from Johnson to Chapman was filed for record at the time plaintiff purchased from Johnson, plaintiff is not entitled to claim as an innocent purchaser, for the reason that he had actual knowledge of the existence of these instruments.

On this proposition, plaintiff testified that he knew at the time he purchased from Johnson that the deed from Chapman to Johnson had not been placed of record, and knew that the same was in escrow in the First National Bank at Holdenville, and also testified that he knew an oil and gas lease in and to said premises was executed by Johnson and placed in escrow in said bank.

Plaintiff does not contend that he did not known of the existence of the oil and gas lease under which defendants claim, his only contention is that he was ignorant of the contents thereof. His testimony is that at the time he purchased the premises Johnson represented to him that the lease was only an 8-year lease, and that had he known it was a 25-year paid up lease, he would not have purchased the same. In other words, his contention is that, while he had actual knowledge of the existence of these unrecorded instruments, he had no knowledge of their contents, and is, therefore, entitled to claim as an innocent purchaser. This position cannot be sustained. In 39 Cyc., at page 1715, it is said:

"A purchaser is affected with notice of the recitals in the instruments forming his

chain of title and material thereto, whether recorded or not. Consequently, a purchaser under a conveyance referring to an unrecorded deed is chargeable with notice of its contents."

In 27 R. C. L., at page 716, the author says:

"* * * A purchaser from a grantee in possession under an unrecorded deed is charged with notice of the express reservation of a vendor's lien in the unrecorded deed."

See, also, Hancock et al. v. Gum et al. (Ga.) 107 S. E. 872; Davis v. Butler (Miss.) 91 So. 709; City of Dallas v. Rutledge (Tex.) Civ. App.) 258 S. W. 534.

Plaintiff, however, contends that the rule announced in the above authorities cannot here prevail, for the reason that, prior to the execution of the deed from Johnson to himself, he made inquiry of Godfrey, Chapman's agent, as to what Chapman claimed against the land, and that Godfrey advised him that Chapman only claimed $900 against it and that he made no mention of the oil and gas lease, and, for this reason, he was not bound to examine the instruments. On this proposition, plaintiff testified as follows:

"Q. Now, Mr. Kendall, state now, to begin with—these negotiations—you said you went up and had a conversation with Mr. Godfrey with reference to these transactions. —State to the court what conversation you had between you and Mr. Godfrey? A. Well, we went in there and told Mr. Godfrey that I was buying this tract of land off of Mr. Johnson and told him what I was giving Mr. Johnson for it, I was giving Mr. Johnson $600, and Mr. Johnson said he owed them $900 on this tract of land, and that I wanted to know just exactly what they had against this tract of land, and he said 'All right, I will give it to you.' He said, 'All of the papers are in the First National Bank in escrow,' and he taken a piece of paper and wrote the numbers of the land, it was NW 1-4 of 35 6-8, and then he wrote down when the first payment would be and it was to be on June 7, 1919, I were to pay $200 and they were to turn all of these papers over to me, and then, in two years from 1919, I were to pay them $700, at straight eight per cent. interest; they were to take a mortgage when I made this first payment on the whole tract of land."

It will be seen from this testimony that, in the conversation relied upon by plaintiff, Mr. Godfrey expressly referred to the fact that the papers in connection with the transaction were in escrow in the First National Bank. It is true that in this conversation Mr. Godfrey did not specifically call the attention of plaintiff to this lease, but under the evidence it is clear that plaintiff was in nowise misled thereby. He knew that there was an oil and gas lease against the premises. This he does not deny. His only contention is that he was led to believe by Johnson that the same was an 8—instead of a 25-year lease. It is not shown that Godfrey had knowledge of this representation by Johnson. In these circumstances, we know of no principle of law by which the mere failure of Godfrey to specifically call plaintiff's atention to this lease would operate to relieve him of the duty of ascertaining the terms and conditions thereof. Having had knowledge of the existance of the lease, plaintiff was in law chargeable with notice and knowledge of the terms and conditions thereof, and was, therefore, not entitled to have the same canceled and removed as a cloud on his title on the theory that he was an innocent purchaser.

The next question presented is, Was plaintiff entitled to cancellation because of failure to develop as pleaded in his second cause of action? In order to determine this question, it becomes necessary to examine and construe the lease and thus endeavor to arrive at the intention of the parties at the time of its execution.

The lease provides that the same shall remain in full force for a period of 25 years from date, and as long thereafter as oil or gas, or either of them, is produced from the leased premises. The consideration as expressed in the lease is $400 cash consideration paid at the time of the execution thereof. The lease provides for payment to the lessor of a one-eighth part of all the oil saved from that produced, and provides for payment to lessor of $150 every year in advance for the gas from each well where gas only is found. As to development, the lease contains the following clause:

"It is further understood and agreed by and between the parties hereto that the said sum of $400 shall be in full payment of all rentals due upon said lease for and during the period of 25 years, and that no further or annual or other rental shall be due from lessee to lessor, but lessee shall, at all times, pay the royalties as above set forth."

It is well estabilished that, in the absence of an express covenant in an oil and gas lease to develop within a certain period, the law will imply a covenant to develop within a reasonable time. Indiana Oil, Gas & Development Co. v. McCrory, 42 Okla. 136, 140 Pac. 610; New State Oil & Gas Co. v. Dunn,

75 Okla. 141, 182 Pac. 514: Hitt v. Henderson, 112 Okla. 194, 240 Pac. 745.

It is equally settled that, where the lease contains an express stipulation for delaying development by the payment of rentals, no implied covenant for development within a reasonable time arises. Eastern Oil Co. v. Beatty, 71 Okla. 275, 177 Pac. 104; Southwestern Oil Co. v. McDaniel, 71 Okla. 142, 175 Pac. 920; Southwestern Oil Co. v. Kersey, 80 Okla. 135, 195 Pac. 120; McKee v. Thornton, 79 Okla. 138, 192 Pac. 212.

The question, then, to be determined is, Does the clause in the lease above quoted amount to a stipulation that development may be postponed? We think this question must be answered in the affirmative. The lease provides that the $400 cash payment shall be in full payment of rentals for the 25-year period covered by the lease, and that no other annual rent shall be due lessor during said period. We think the words "annual rental" have a well known meaning in oil parlance, and mean payments made annually for the privilege of postponing development. Under the evidence, it cannot be doubted that the contracting parties so understood when entering into the contract, and that they intended that the lease should remain in full force during the entire term without further payments and without development. In our opinion, to hold otherwise would amount to holding that this clause in the contract has no meaning whatever.

There can be no question but that it was the intention of the parties at the time the premises were sold by Chapman to Johnson, that Chapman, as a part of the purchase price consideration, was to have and retain a paid-up lease on the premises. The deed from Chapman to Johnson so provides, and, under the testimony, the lease was executed by Johnson to Chapman in accordance with an agreement to that effect entered into between the parties at the time of the sale.

The deed and lease in question were placed in escrow at the same time, and as part of the same transaction, and must, therefore, be construed together as one instrument, and, so construing them, we arrive at the conclusion that the paid-up lease referred to and reserved by Chapman in his deed to Johnson means a 25-year paid-up lease.

In our opinion, this clause of the lease, taking into consideration the facts and circumstances surrounding its execution, amounts to a stipulation for delaying development, and plaintiff was, therefore, not entitled to a decree of cancellation because of failure to develop.

The question of drilling offset wells to prevent drainage is not here involved, as, under the evidence, the nearest producing well to this lease is a distance of four miles.

Judgment should be reversed, and the cause remanded, with directions to enter judgment in favor of defendants.

BENNETT, TEEHEE, JEFFREY, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 27 R. C. L. p. 716; 6 R. C. L. Supp. p. 1668. (2) 18 R. C. L. p. 1190, 1212. See "Mines and Minerals," 40 C. J. §686, p. 1070, n. 53. "Vendor and Purchaser," 39 Cyc. p. 1715, n. 91.