## ORR v. COMAR OIL CO.
### No. 296.

Circuit Court of Appeals, Tenth Circuit.
Dec. 26, 1930.

R. W. Stoutz, of Tulsa, Okl. (M. L. Opperud and O. B. Martin, both of Blackwell, Okl., on the brief), for appellant.

Joseph R. Long, Jr., of St. Louis, Mo. (Thompson, Mitchell, Thompson & Young, Claude P. Berry, and Joe T. Dickerson, all of St. Louis, Mo., on the brief), for appellee.

Before PHILLIPS and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

PHILLIPS, Circuit Judge.

On April 21, 1924, William Orr, hereinafter called plaintiff, executed and delivered to the Comar Oil Company, hereinafter called defendant, an oil and gas lease on six and one-eighth acres of land in Kay county, Oklahoma, for a period of five years and so long thereafter as oil and gas or either of them should be produced from such land by the defendant. Such lease provided for a one-eighth royalty, and further provided:

"If no well be commenced on said land on or before the 21st day of April, 1925, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor * * * the sum of twelve and no/100 dollars, which shall operate as a rental and cover the privilege of deferring the commencement of a well for 12 months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively."

On May 29, 1925, plaintiff and the defendant entered into a supplemental agreement, which refers to such lease, recites that "production of oil and gas has been secured on a tract of land near and east" of the land included in such lease, and provides that, in consideration of ten dollars and the mutual covenants and agreements therein contained, "it is agreed by and between the parties * * * as follows:

"First: Two wells in the above tract, one to be located in the approximate center of the six and one-eighth acre tract, and one well to be located approximately in the center of the above one and one-eighth acre tract will protect the lessors from all wells drilled around said tracts of land.

"Second: In the event that oil or gas in paying quantities is found on the W. H. Franks, David Le Marr, or H. B. Jones tracts or in block one or two in the townsite of Braman, Comar agrees immediately, fifteen (15) days therefrom, to commence to drill the above well provided for in the above one and one-eighth acre tract, and to drill the same with due diligence to off-set said well, providing, however, that if the first well is lost Comar shall have a reasonable time to skid its rig and commence another hole and drill the same as above provided.

"Third: If production is secured on the Chambers, Humphrey and Richer one and three-eighth (1⅜) acre tract to the east of the above land or on the Rose A. Biddle four and one-fourth (4¼) acre tract to the west of the above land, Comar agrees to begin operations within fifteen (15) days therefrom to drill the above well in the center of the six and one-eighth (6⅛) acre Orr tract and to drill the same with due diligence to off-set said producing well, provided, however, that if the first well is lost Comar shall have a reasonable time to skid its rig and commence another hole and drill the same as above provided. Should production be secured on the W. H. Franks, or David Le Marr, or on block one or two of the townsite of Braman, and should, at the time such production is secured, a well be drilled on the Chambers, Humphrey and Richer one and three-eighths acre tract, then in that event Comar agrees to immediately commence a well as above mentioned in the center of the six and one-eighth acre tract.

"Fourth: All other wells, than as herein provided for, to be drilled by Comar on land whereof it is lessee adjoining that first above described, shall not be located closer to the lines of the William Orr six and one-eighth acre tract than the well in the center of the six and one-eighth tract."

Plaintiff brought this action upon such lease and supplemental agreement to recover damages on account of the defendant's failure to drill off-set wells on plaintiff's land.

The six and one-eighth acres of land of the plaintiff is hereinafter referred to as the Orr tract. Approximately five acres thereof is in the form of a square and approximately one and one-eighth acres is in the form of a rectangular extension from the south side of the square portion.

The relative locations of the Orr tract, the adjoining tracts and the various oil and gas wells which were drilled thereon are shown on the following plat:

initial production of 6,995 barrels per day. Between August 7 and August 20, 1925, it was deepened to 2,389 feet. On the latter date, it produced 6,065 barrels of oil. Bechtel No. 2 was commenced June 20, 1925, and completed August 18, 1925, at a depth of 2,398 feet. It came in with an initial production of 1,952 barrels per day. Bechtel No. 4 was commenced August 15, 1925, and completed October 9, 1925, at a depth of 2,-364 feet. It came in with an initial produc-

Immediately east of the Orr tract, there is located a similarly shaped tract known as the Community tract. To the north and east of the Community tract is situated the Bechtel tract. To the north and west of the Orr tract is situated the Biddle tract. The Community, Bechtel and Biddle tracts were all under lease to the defendant. To the west of the rectangular portion of the Orr tract is situated the Jones tract, which was leased to Shawver.

Bechtel well No. 3—3W is located 263 feet from the east boundary of the square portion of the Orr tract. This well was begun June 21, 1925, and drilled to a depth of 2,390 feet, where it came in with an initial production of 267 barrels per day. Drilling was resumed March 12, 1926, and on May 18, 1926, it was completed to the Wilcox sand, at a depth of 3,495 feet, where it came in with an initial production of 175 barrels per day.

Bechtel No. 1 was commenced June 14, 1925, and completed July 17, 1925, to a depth of 2,380 feet. It came in with an

tion of 2,102 barrels. Bechtel No. 6 was commenced December 1, 1925, and completed January 15, 1926, at a depth of 2,-376 feet. It came in with an initial production of 3,878 barrels. Johnson No. 1 was commenced June 11, 1925, and completed July 21, 1925, at a depth of 2,378 feet. It came in with an initial production of 607 barrels per day.

Well No. 1 on the Orr tract, located in the center of the square portion, was commenced June 29, 1925, and completed to a depth of 1,762 feet on July 16, 1925, and abandoned as a dry hole. Well No. 2 on the Orr tract, located in the rectangular portion, was drilled to a depth of 70 feet. It was abandoned at that depth owing to the fact that Jones well No. 1, which was drilled to a depth 2,650 feet, produced only a showing of oil. Well No. 3W in the square portion of the Orr tract was commenced June 10, 1926, and completed to a depth of 2,520 feet on July 22, 1926. Sand was encountered from 2,440 to 2,490 feet, lime from 2,-490 to 2,500 feet, sand from 2,500 to 2,515

feet and lime from 2,515 to 2,520 feet. It produced neither oil nor gas in paying quantities from either of such sands.

Braman Townsite No. 2 produced only a showing of oil. Braman Townsite No. 1 produced no oil.

Wells Nos. 3 and 3W on the Braman Community lease, located immediately between Bechtel No. 3—3W and the square portion of the Orr tract, resulted in dry holes. Well No. 2 on the Braman Community lease produced a small amount of oil for a short time, but not in commercial quantities.

There was no evidence as to the depth of or the production from any of the other wells shown on the plat.

There were no producing wells on adjoining tracts north, west or south of the Orr tract. The only producing well located adjacent to the Orr tract was Bechtel No. 3—3W. The large producers were a considerable distance east of that well.

O. H. Borst, a geologist testified that he had not made a particular examination of the field in which the Orr and Bechtel tracts are located; that he had seen other fields in that vicinity and was familiar in a general way therewith; that, under normal conditions, Bechtel No. 3—3W would drain oil from the Orr tract; that such drainage might not result because of geological faults, tightness of sand or termination of the structure east of the Orr tract, and that the geological conditions there were irregular. The evidence did not negative the existence of the conditions under which such drainage would not result.

The defendant paid and the plaintiff accepted delay rentals under the lease on April 21, 1925, 1926, 1927 and 1928.

The plaintiff was present when Bechtel No. 3—3W came in, kept informed concerning production on the leases near the Orr tract, and knew Bechtel No. 3—3W was producing oil in substantial quantities at the times he accepted delay rentals on April 21, 1926, 1927 and 1928.

The plaintiff produced evidence of the cost of drilling an oil well in the vicinity where his land was located and also the amount of production from all of the wells on the Bechtel tract. He did not show the amount of production from Bechtel No. 3—3W separately.

At the close of plaintiff's evidence, the defendant moved for a directed verdict in its favor upon the following grounds: (1) That the acceptance of delay rentals by the plaintiff with full knowledge of the production from Bechtel No. 3—3W was a waiver of the implied covenant to drill an off-set well against Bechtel No. 3—3W. (2) That the plaintiff failed to establish any loss through drainage from the Orr tract. (3) That the plaintiff failed to introduce any evidence from which the amount of damages could be determined with reasonable certainty. The court sustained this motion and the verdict and judgment went in favor of defendant. Plaintiff has appealed.

Plaintiff contends that an implied covenant of the original lease obligated the defendant to drill off-set wells to protect his land, and that the supplemental contract expressly obligated the defendant to drill a well to off-set Bechtel No. 3—3W.

It will be observed that the parties, by paragraph one of such supplemental contract, defined what would be sufficient off-set wells on the Orr tract, in the event the necessity for off-set drilling should arise. They next, by paragraph two, provided that, if production should be found on certain adjoining tracts, such off-set well in the center of the rectangular portion of the Orr tract should be drilled, and specified when it should be commenced. They next, by paragraph three, provided that, if production should be found in certain other adjoining tracts, such off-set well in the center of the square portion of the Orr tract should be drilled, and specified when it should be commenced. And finally, by paragraph four, they provided that the defendant should not drill on the adjoining tracts within a certain distance of the boundaries of the Orr tract.

The supplemental contract contains no express language imposing an obligation to drill an off-set well to Bechtel No. 3—3W.

Since neither oil nor gas in paying quantities was found in either of the adjoining tracts, referred to in paragraphs two and three, the contingencies upon which the express obligation to drill off-set wells, under the provisions of such paragraphs, never occurred. Therefore, the provisions of such paragraphs are material here only in so far as they may throw light upon and aid in the construction of the remaining provisions of the supplemental contract. Any express agreement to drill an off-set well to Bechtel No. 3—3W must therefore be found in paragraph one. To construe that paragraph as an absolute covenant to drill such well in the center of the square portion, to off-set Bechtel No. 3—3W, would make it

inconsistent with paragraph three of the supplemental contract, which provides for the drilling of such well upon the happening of a future contingency. The parties would not have provided for the drilling of such well upon the happening of a future contingency had they intended paragraph one to require the immediate drilling thereof. We conclude that the obligation of the defendant to drill off-set wells, if any, must rest upon an implied covenant of the original lease.

 Counsel for the plaintiff contend that, under the lease, the acceptance of rentals excused the obligation for primary development but not the obligation to drill off-set wells. Texas Co. v. Ramsower (Tex. Civ. App.) 255 S. W. 466, 467; Id. (Tex. Com. App.) 7 S.W.(2d) 872; Id. (Tex. Com. App.) 10 S.W.(2d) 537, supports plaintiff's contention.

On the other hand, Eastern Oil Co. v. Beatty, 71 Okl. 275, 177 P. 104, Carper v. United Fuel Gas Co., 78 W. Va. 433, 89 S. E. 12, L. R. A. 1917A, 171, Stanley v. United Fuel Gas Co., 78 W. Va. 793, 90 S. E. 344, and Clear Creek Oil & Gas Co. v. Brunk, 160 Ark. 574, 255 S. W. 7, hold that the acceptance of delay rentals, after breach of the implied covenant to drill off-set wells, with full knowledge of such breach on the part of the lessor, constitutes a waiver of the implied covenant to drill off-set wells. See, also, notes, 19 A. L. R. 445, 60 A. L. R. 955, and Mills-Willingham Law of Oil and Gas, p. 159.

The defendant was obligated, under an implied covenant of the original lease, to exercise reasonable diligence to protect the Orr tract from drainage through wells on adjoining tracts. Pelham Petroleum Co. v. North, 78 Okl. 39, 188 P. 1069, 1072; Goodwin v. Standard Oil Co. (C. C. A. 8) 290 F. 92; Brewster v. Lanyon Zinc Co. (C. C. A. 8), 140 F. 801; Humphreys Oil Co. v. Tatum (C. C. A. 5) 26 F.(2d) 882; 40 C. J. p. 1067, § 684.

In Petroleum Co. v. North, supra, the court quoted with approval the following from the opinion in Brewster v. Lanyon Zinc Co., supra:

"Whatever, in the circumstances, would be reasonably expected of operators of ordinary prudence, having regard to the interests of both lessor and lessee, is what is required."

The drilling of an off-set well on the Orr tract would have performed such implied covenant and also the covenant for primary development. Therefore, plaintiff was not entitled to both the drilling of an off-set well and to the payment of delay rentals. He was not entitled to have that which would have performed the covenant for primary development and also to that which was to be paid in lieu thereof. Plaintiff, having accepted delay rentals with full knowledge of the production from Bechtel No. 3—3W and the necessity for off-set drilling, if any there was, could not consistently insist upon the drilling of an off-set well during the period for which such delay rentals were accepted.

 It is our conclusion that a lessor who accepts delay rentals, before necessity for off-set drilling has arisen or without knowledge of such necessity, does not waive a breach of the implied covenant to drill off-set wells; but a lessor who accepts delay rentals, after the necessity for such off-set drilling has arisen and is known to him, waives the performance of the implied covenant to drill off-set wells during the period for which such delay rentals are accepted.

It follows that the breach, if any there was, of the implied covenant to drill off-set wells, was waived by the acceptance of delay rentals.

 The burden was upon the plaintiff to show that the defendant failed to exercise reasonable diligence in drilling off-set wells on the Orr tract. Goodwin v. Standard Oil Co. (C. C. A. 8) 290 F. 92, 98. The nearest producing well to the Orr tract was Bechtel No. 3—3W. Wells drilled to the south and west of the Orr tract were nonproductive. Wells drilled between Bechtel No. 3—3W and the Orr tract were nonproductive. Well No. 3 on the Orr tract, drilled to a depth of 2,520 feet and through two sands, was nonproductive. Initial production on the Bechtel tract was less on the portion nearest to the Orr tract. Outside of the testimony of Borst, whose evidence consisted of expert opinions based upon assumed, rather than established facts, the proof all tended to show that the Orr tract was off structure and nonproductive. There was no evidence from which a jury would have been warranted in finding that the defendant, under the circumstances, in the drilling of off-set wells, failed to do what "would be reasonably expected of operators of ordinary prudence, having regard to the interests of both lessor and lessee."

It follows that the judgment was right and it is therefore affirmed.