## JACKSON v. TEXAS CO.
### No. 1068.

Circuit Court of Appeals, Tenth Circuit.
Feb. 2, 1935.

Rehearing Denied March 25, 1935.

Garrett Logan, of Tulsa, Okl. (Villard Martin and Geo. S. Ramsey, both of Tulsa, Okl., on the brief), for appellant.

B. W. Griffith, of Tulsa, Okl. (J. H. Hill, John R. Ramsey, and Sol H. Kauffman, all of Tulsa, Okl., on the brief), for appellee.

Before LEWIS and PHILLIPS, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge.

This suit commenced in the state court was removed to the court below on the ground of diversity of citizenship. The court below sustained the general demurrer of the defendant, the Texas Company, a Delaware corporation, appellee here, to the complaint, and plaintiff, appellant here, electing to stand upon her complaint, judgment was entered dismissing the action. Appellant thereupon appealed the case to this court. The ruling of the trial court on the demurrer is the sole question for review by this court.

The facts in the case, as alleged in the complaint and admitted by the demurrer, are the following: The Texas Company, a Texas corporation, by a deed dated June 21, 1920, a copy of which is attached to the complaint, conveyed to appellant the N. 2 of S. E. 4 and S. W. 4 of S. E. 4 of section 7, township 18 north, range 9 east, situated in Creek county, Okl., with other lands. On April 19, 1927, the Texas Company, a Texas corporation, conveyed to the appellee, the Texas Company, a Delaware corporation, all its assets including all its right, title, claim, and interest in the lands conveyed to appellant by the deed dated June 21, 1920. At the time of the conveyance of the lands described to appellee, the Texas corporation was the owner of an oil and gas lease upon the following described premises: the W. 2 of W. 2 of N. W. 4 of S. W. 4 of section 8, township 18 north, range 9 east, Creek county, state of Oklahoma, which lands are adjacent to and immediately east of the lands conveyed to appellant. This lease was conveyed to appellee, the Delaware corporation, with the other lands and property conveyed to it by the Texas corporation, on April 19, 1927. A copy of this deed is attached to the complaint and made a part thereof. At some time unknown to appellant the appellee, the Delaware corporation, or its predecessor, the Texas corporation, drilled and equipped an oil and gas well on the leased premises above described at a location offsetting the east line of appellant's lands above described, at a cost not to exceed $4,000. This well has produced many thousand barrels of oil. Because of its proximity, it has drained crude oil from under her land of the value of not less than $200,000, and, if

continued, will drain oil from under her land of the value of $100,000. Appellant has made repeated demands upon appellee to drill an offset well on her land to protect against and prevent this drainage. Appellee has refused to drill such offset well itself and has also refused to permit appellant to do so. In her complaint appellant claims a one-eighth interest in the oil drained and to be drained from under her land and prays judgment for the sum of $37,500 as damages.

The deed to appellant from the Texas corporation, dated June 21, 1920, contains the following provisions:

"But *is* is expressly understood and agreed that there is reserved and excepted from, and not included in, this conveyance, the oil, gas, coal, sulphur and other minerals of any character, whatsoever, that may be on, in or under the aforesaid described land, together with the right of ingress and egress thereon, in perpetuity, and with the full right and privilege of grantor, its successors and assigns, to the use of so much of the surface of said tract of land as may be reasonably necessary to build and erect thereon works and appliances to facilitate the development, exploration and operation for the removal of such minerals. And it is further covenanted and agreed, which agreement shall be a covenant running with the land, that the possession of the surface of the heretofore described premises by the grantee, her agents, lessees, heirs, administrators or assigns, shall not be held or construed to be adverse to the grantor, its successors or assigns, insofar as such possession may effect the mineral reservation and right of operation set forth in this instrument.

"It is agreed that while party of the first part, its successors and assigns, shall never be under any obligation to develop said land for minerals, should it, its successors or assigns, at any time hereafter produce minerals in paying quantities, it agrees to pay to party of the second part, her heirs or assigns, a royalty of one-eighth (⅛) of the oil and gas or other minerals produced and saved from the above described land."

Counsel for appellant open their argument in their brief with this statement: "The sole question presented, argued and decided in the trial court, and the sole question to be presented to this court, in our view of the case, is this: Is there, in the deed from the Texas Company to Pearl B. Jackson, an implied covenant on the part of the grantor to protect the premises from drainage?"

In the development of their argument counsel assimilate the provisions of the deed above quoted to the provisions of oil and gas leases, particularly in respect of implied covenants in such leases to drill off-set wells to prevent drainage by wells upon adjacent property. They state their proposition in this way: "When the Texas Company inserted in its deed an express covenant that it should 'never be under any obligation to develop said land for minerals,' it destroyed the possibility of the existence of any implied covenant on its part to well develop—drill up—the property if oil or gas were discovered. But that express covenant in no wise affected its obligation to protect the premises from drainage. Such covenant is independent of, is separate and distinct from, and covers a subject-matter other than that embraced in, the covenant to develop. The express covenant as to development and the implied covenant as to protection from drainage are not conflicting and may and do exist together. One does not destroy the other."

In support of this proposition they cite and rely upon: Denker v. Mid-Continent Petroleum Corporation (C. C. A.) 56 F.(2d) 725, 84 A. L. R. 756; Orr v. Comar Oil Company (C. C. A.) 46 F.(2d) 59; Pelham Petroleum Co. v. North, 78 Okl. 39, 188 P. 1069; Fox Pet. Co. v. Booker, 123 Okl. 276, 253 P. 33.

Counsel for appellee in their opening statement in their brief say: "This matter being before the court on appeal by the plaintiff from an order of the United States District Court for the Northern District of Oklahoma sustaining the demurrer of the defendant to the plaintiff's petition, we are fortunate in that no questions of fact are here presented. The matter resolves itself into a question of law involving the construction of a deed which we think is determinative of the case."

Following this opening statement counsel for appellee say:

"On or about the 21st day of June, 1920, The Texas Company (a corporation of Texas, and the predecessor of the present defendant), sold and conveyed the surface rights in and to the North Half of the Southeast Quarter and the Southwest Quarter of the Southeast quarter of Section 7, Township 18 North, Range 9 East, in Creek County, Oklahoma (and other lands not involved in this litigation), to the plaintiff, Pearl B. Jackson. This conveyance was made in the form of a deed of that date which expressly

reserved and excepted from such conveyance 'the oil, gas, coal, sulphur and other minerals of any character whatsoever,' and which deed also expressly reserved to said The Texas Company, its successors and assigns, the right of ingress and egress and the right to the use of so much of the surface as might be reasonably necessary to explore for and carry on its operations for the mining and removal of such minerals.

"If the deed had stopped here there could have been no contention under any theory that the plaintiff was entitled to any rights in or benefits from the minerals in and under said land, either actual or contingent. The parties to this deed provided, however, that under a certain contingency the plaintiff should be entitled to receive one-eighth of the oil, gas or other minerals that might be produced and saved from said land. In the very breath that this contingency was provided for, however, the parties expressly agreed that said The Texas Company, its successors and assigns, should never be under any obligation to develop said land for minerals. In other words, it was expressly provided, as a part of the consideration of said conveyance by The Texas Company to the plaintiff, that it should at all times be left entirely optional with said The Texas Company as to whether it would develop said land for minerals, and the parties expressly relieved it from any obligation so to do; but it was provided that if it did in fact develop said land for minerals, and any of such minerals were produced, then that the plaintiff should be entitled to receive a certain percentage thereof."

"This is not the case of a conveyance of the mineral rights by the plaintiff to The Texas Company, and of the reservation by her of a royalty interest in land impliedly to be developed; it is not the case of an oil and gas lease from plaintiff to The Texas Company, with implied covenant for development; it is the case of a conveyance of the surface rights to plaintiff accompanied by a potential or possible interest in royalties strictly contingent upon The Texas Company's actual development of the premises, and by an instrument that not only did not create implied covenants for development but which expressly negatived any such obligation on the part of The Texas Company. The Texas Company evidently, from the terms of this deed, intended to reserve full power and control over the question of the development or non-development of these minerals. It was under no obligation or ne-

cessity to convey these surface rights and this contingent royalty interest to Mrs. Jackson, and unless this matter of development were left entirely to its option and expressly agreed to by the parties as a part of the consideration for such conveyance, it would not have executed the deed. * * * To carry out this apparent purpose, the parties expressly provided that The Texas Company, its successors and assigns, should 'never be under any obligation to develop said land for minerals.'"

Their subsequent argument is predicated upon this opening statement in the course of which considerable stress is laid upon the word "develop" used in the deed and as used by them in the above-quoted sentences from their brief, citing and relying upon Prowant v. Sealy, 77 Okl. 244, 187 P. 235; Charlton v. Kelly (C. C. A.) 156 F. 433, 13 Ann. Cas. 518; Papoose Oil Co. v. Swindler, 95 Okl. 264, 221 P. 506; Smith v. Gypsy Oil Co., 130 Okl. 135, 265 P. 647; Amerada Petroleum Corporation v. Sledge, 151 Okl. 160, 3 P.(2d) 167; Orr v. Comar Oil Co. (C. C. A.) 46 F. (2d) 59; Sauder v. Mid-Continent Petroleum Corporation, 292 U. S. 272, 54 S. Ct. 671, 78 L. Ed. 1255, 93 A. L. R. 454; Jennings v. Southern Carbon Co., 73 W. Va. 215, 80 S. E. 368; Hunt v. State (Tex. Civ. App.) 48 S.W.(2d) 466; Watchhorn v. Roxana Petroleum Corporation (C. C. A.) 5 F.(2d) 636; Harris v. Ohio Oil Co., 57 Ohio St. 118, 48 N. E. 502; Cosden v. Cline (C. C. A.) 26 F. (2d) 631.

■ Whatever may be the merit or plausibility of the respective arguments of counsel, the fact remains that the correct decision of this case depends upon the discovery and adoption of the true meaning of the deed from the Texas corporation to appellant dated June 21, 1920. The true meaning of the deed can be arrived at only through the consideration of the language used in it, in the light of the situation of the parties under the circumstances existing at the time of the execution of the deed, together with all fair inferences to be drawn from this situation and these circumstances. The situation of the parties and the circumstances existing at the time of the execution of the deed, so far as they appear, are shown by the allegations in the complaint and admitted by the demurrer. These facts have been already stated. A consideration of these several factors leads one to note that the deed to appellant dated June 21, 1920, conveyed other lands than those specifically set out in

the copy of the deed attached to the complaint. One also notes that in the deed from the Texas corporation to the Delaware corporation, dated April 19, 1927, many other lands are described in association with appellant's lands in which the Texas corporation only grants and conveys to the Delaware corporation its right, title, claim, and interest, while in respect to numerous other tracts it conveys the full title. In this connection we think it may be assumed as a matter of common knowledge that persons and corporations whose business is the exploration and development of oil lands and the production and sale of oil and gas from producing wells, are not as a rule interested in the improvement of such lands for other purposes; and that as a general rule they prefer to have the right to explore and develop lands for oil and gas through a leasehold or other limited interest rather than to hold the full title. In any event, such preference seems to have actuated the Texas corporation when it conveyed the lands described in the deed of June 21, 1920, to appellant wherein it excepted from the grant the oil, gas, and other minerals in said lands. Undoubtedly, the Texas corporation prepared the deed of June 21, 1920, and dictated its language. A lack of accuracy is manifest in the way the reservation and exception in the deed are placed and applied.

Tiffany on Real Property, § 383, says:

"The purpose and effect of an exception in a conveyance is to exclude or except from the operation of the conveyance some part of the thing or things covered by the general words of description therein, as when one conveys a piece of land, excepting a certain part thereof or the houses thereon, it being always of a thing actually existent. A reservation, on the contrary, as defined by the common law writers, is a clause by which the grantor reserves to himself some new thing issuing out of the thing granted and not in esse before. * * *

"Since an exception is in effect merely a part of the description of the thing granted, the subject of the exception remains in the grantor, as before the conveyance, and no words of inheritance or other words of limitation are necessary in order that the grantor may retain the same estate in the thing excepted as he had before. A reservation, on the other hand, since it creates a thing not before in esse, must contain words of inheritance, in jurisdictions where the common law rule has not been changed by statute."

Tiedman on Real Property, § 843, says: "An exception to a grant withdraws from operation of the conveyance some part or parcel of the thing which is granted, and which but for the exception would have passed to the grantee under the general description. The part excepted is already in existence and is said to remain in the grantor. The grant has no effect upon it. A reservation is the creation, in behalf of the grantor, of some new right issuing out of the thing granted, something which did not exist, as an independent right before the grant. Sometimes the terms reservation and exception are used synonymously, but the distinction above given is proper and essential. A reservation is in the nature of a grant to the grantor and therefore requires the same words of limitation as in the direct grant to the grantee, but an exception requires no words of limitation."

The Supreme Court in Greenleaf v. Birth, 6 Pet. 302, 310, 8 L. Ed. 406, speaking through Mr. Justice Story, on the subject of an exception, said: "In order, therefore, to ascertain what is granted, we must first ascertain what is included in the exception; for whatever is within the exception, is excluded from the grant. * * *"

4 Kent's Commentaries (8th Ed.) p. 523, says: "A reservation is a clause in a deed, whereby the grantor reserves some new thing to himself issuing out of the thing granted, and not in esse before; but an exception is always a part of the thing granted, or out of the general words and description in the grant."

From the facts alleged in the complaint, it is a fair inference that the oil involved in this litigation was in existence in the lands conveyed at the date of the conveyance. Title to it, therefore, did not pass to appellant. On the other hand, the right of ingress, etc., in perpetuity reserved in the deed was a new right then created and reserved to the grantor, the Texas corporation. The right to enter upon the land and to appropriate "so much of the surface of said tract of land as may be reasonably necessary to build and erect thereon works and appliances to facilitate the development, exploration and operation for the removal of such minerals," constituted a most serious burden upon the land, particularly when it is remembered that the easement was in perpetuity. This perpetual easement, without future expense to the corporation and without obligation on its part to ever make use of it, was undoubtedly for the Texas corporation

a most satisfactory arrangement. For some reason, it seems to have been thought necessary to buttress the reservation already made in the deed against the chance of a future plea of adverse possession by the provision which reads: "And it is further covenanted and agreed, which agreement shall be a covenant running with the land, that the possession of the surface of the heretofore described premises by the grantee, her agents, lessees, heirs, administrators or assigns, shall not be held or construed to be adverse to the grantor, its successors or assigns, insofar as such possession may effect the mineral reservation and right of operation set forth in this instrument."

The paragraph of the deed following the above provision is the one which has given rise to this litigation. It reads: "It is agreed that while party of the first part, its successors and assigns, shall never be under any obligation to develop said land for minerals, should it, its successors or assigns, at any time hereafter produce minerals in paying quantities, it agrees to pay to party of the second part, her heirs or assigns, a royalty of one-eighth ($\frac{1}{8}$) of the oil and gas or other minerals produced and saved from the above described land."

It is the meaning of the language of this paragraph or sentence which must be determined in the light of the situation of the parties, and the circumstances surrounding them at the time the language was adopted and incorporated in the deed.

Counsel for appellee in their brief state the meaning of this paragraph as they construe it by this paraphrase: "In other words, it was expressly provided, as a part of the consideration of said conveyance by The Texas Company to the plaintiff, that it should at all times be left entirely optional with said The Texas Company as to whether it would develop said land for minerals, and the parties expressly relieved it from any obligation so to do; but it was provided that if it did in fact develop said land for minerals, and any of such minerals were produced, then that the plaintiff should be entitled to receive a certain percentage thereof."

If the paraphrase expressed the understanding of the parties at the time the paragraph in question was written and incorporated in the deed, it is unfortunate that the ideas so clearly expressed in the paraphrase were not equally clearly expressed in the paragraph. Considering how easily such clarification might have been secured, it is passing strange, if such was the understanding, that the meaning of the paragraph was not so clarified. Omit the word "while" from it and insert the words "develop said land for minerals and" between the words "at any time hereafter" and "produce minerals in paying quantities," and it is done. It is the presence of that little word "while" and the absence of the words "develop said land for minerals and" that occasioned this lawsuit. In determining the meaning of the paragraph, the presence of the one and the absence of the others in the place indicated must be taken into account.

The argument above referred to of counsel as to the meaning of "develop" as we view it is beside the question. The question is not the meaning of "develop" but the meaning of "produce" and "produced and saved," as used in the last clause of the paragraph. Nor may the word "while" be arbitrarily omitted in the search for the true meaning.

The conjunction "while" is often used adversatively and to imply contrast. See examples in Century dictionary. It also in some constructions introduces a parenthetical clause. In the paragraph under consideration, it is clear that the introductory phrase "It is agreed that" does not apply to the clause, "while party of the first part, its successors and assigns, shall never be under any obligation to develop said land for minerals."

What is agreed to is that "should it, its successors or assigns, at any time hereafter produce minerals in paying quantities, it agrees to pay to party of the second part, her heirs or assigns, a royalty of one-eighth ($\frac{1}{8}$) of the oil and gas or other minerals produced and saved from the above described land."

The clause introduced by "while" is in the construction used parenthetical and should be so indicated, namely: "It is agreed that (while party of the first part, its successors and assigns, shall never be under any obligation to develop said lands for minerals) should it, its successors or assigns, at any time hereafter produce minerals in paying quantities, it agrees to pay to party of the second part, her heirs or assigns, a royalty of one-eighth ($\frac{1}{8}$) of the oil and gas or other minerals produced and saved from the above described land."

When so written, it is seen that the clause in parentheses can be omitted altogether without detracting an iota from the thing agreed to, namely, "should it, its successors or assigns, at any time hereafter produce minerals in paying quantities, it agrees to

pay to party of the second part, her heirs or assigns, a royalty of one-eighth (⅛) of the oil and gas or other minerals produced and saved from the above described land."

In such construction the production of minerals in paying quantities is in no way made to depend upon the development of the land for minerals. On the contrary, the parenthetical clause implies a concession in the production of minerals beyond development for minerals.

If the phrase "it is agreed that" because of the words "it agrees to pay" used later in the sentence should be omitted as tautological, the paragraph would read: "While party of the first part, its successors and assigns, shall never be under any obligation to develop said land for minerals, should it, its successors or assigns, at any time hereafter produce minerals in paying quantities, it agrees to pay to party of the second part, her heirs or assigns, a royalty of one-eighth (⅛) of the oil and gas or other minerals produced and saved from the above described land."

In this construction the word "while" puts "develop" and "produce" in contrast comparable to the example, "While I admire his bravery, I esteem his moderation," given in the Century dictionary. "Produce" in this construction is no more subordinate to or dependent upon "develop" than is "esteem" subordinate to or dependent upon "admire" in the sentence above quoted.

According to the allegations of the complaint, the Texas corporation held an oil and gas lease on the land adjacent to and east of the land conveyed to appellant on June 21, 1920, the date of said deed. It is a matter of common knowledge that oil and gas contained in sands of the earth, when afforded an opportunity of escape through drilled wells, do so without regard to property lines on the surface. This conduct of oil and gas was well known to the parties at the time of the execution of the deed of June 21, 1920. It is a fair inference that such conduct was taken into consideration by the parties and that the paragraph of the deed in question was formulated accordingly. Such an inference affords a valid and reasonable explanation of the use of the word "while" in the opening clause of the paragraph of the deed under discussion and for the omission of the words "develop said land for minerals and" from the second clause as above indicated. Such inference is the more probable and reasonable when the unusual character of the easement reserved is taken into account. This easement necessarily renders the lands subject to it undesirable for many uses and to that extent unmarketable.

The judgment of the trial court is reversed with directions to overrule the demurrer with leave to the defendant to answer the complaint.