# IN THE SUPREME COURT OF IOWA

No. 19–1837

Submitted October 21, 2021—Filed December 10, 2021

**ANNA SOTHMAN,**

Appellant,

vs.

**STATE OF IOWA,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Marion County, Michael K. Jacobsen, Judge.

Applicant seeks further review of the court of appeals decision affirming the district court's denial of her application for postconviction relief. **DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

Waterman, J., delivered the opinion of the court, in which Christensen, C.J., and Mansfield, McDonald, and Oxley, JJ., joined. McDermott, J., filed a dissent, in which Appel, J., joined.

Martha J. Lucey, State Appellant Defender, and Shellie L. Knipfer (argued), Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Tyler J. Buller (argued), Assistant Attorney General, for appellee.

**WATERMAN, Justice.**

In this appeal, we must decide whether a defense attorney's advice about his client's future prospects for release on parole and his failure to object to an in-chambers proceeding constituted ineffective assistance of counsel that entitles the defendant to vacate her guilty plea. The defendant left her thirteen-month-old daughter in the bathtub unattended for about thirty minutes, and during that time, the child drowned. The defendant pleaded guilty to child endangerment resulting in death, and the court imposed an indeterminate sentence of up to fifty years with immediate parole eligibility. She filed no direct appeal. Several years later, she filed this application for postconviction relief, alleging her plea counsel provided ineffective assistance in his parole advice and by failing to object to an in-chambers proceeding. Her plea counsel told her that defendants served an average of 4.6 years for child endangerment resulting in death. Other evidence developed later indicated that her parole was unlikely before she served seven years, or longer.

The district court denied her application, finding she failed to prove breach of an essential duty or prejudice. We transferred the case to the court of appeals, which affirmed the district court, determining the defendant was correctly advised there were no guarantees, parole was up to the parole board, the in-chambers proceeding was not fundamentally unfair, and she failed to establish prejudice. We granted the defendant's application for further review.

On our de novo review, we affirm. The defendant failed to meet her burden to prove that her plea counsel breached an essential duty in his parole advice or

that but for his alleged errors, she would not have pleaded guilty and would have insisted on going to trial. We hold the defendant had a right to conduct the proceeding in open court and her counsel breached his duty by failing to object to his client being placed under oath in the in-chambers proceeding or elicit her waiver. But in this postconviction action, a showing of prejudice is required, and the defendant failed to show she was prejudiced by the in-chambers proceeding. We decline to find a structural error or presume prejudice. Accordingly, we affirm the decision of the court of appeals and the district court's judgment.

## I. Background Facts and Proceedings.

On June 20, 2016, thirteen-month-old E.S. drowned while under the care of her mother, Anna Sothman, at their home in Pella, Iowa. Sothman, age twenty-eight, had fed her three young children breakfast after her husband left for work. No one else was home with the children. Sothman put E.S. in the bathtub by 8:45 a.m. because of a dirty diaper. Sothman then left the child alone in the bathtub for roughly thirty minutes without checking on her. During that time, Sothman talked by phone twice with her mother, texted, received another phone call, broke up a fight between her two year old and four year old, and used Pinterest.[1]

Sothman's phone records showed her first six-minute phone call with her mother began at 8:44 a.m. and her second six-minute call with her mother lasted from 9:11 a.m. to 9:16 a.m. Sothman did not stay in the bathroom for those

---

[1]Pinterest is a social media site where users share and save interesting images. Users pin an image from a webpage, such as an image of a recipe, and save it to their collection, known as a board. Each board can be public or private.

phone calls because she was charging her phone's battery in another room. Her social media records show she was logged into Pinterest from 8:28 a.m. to 9:16 a.m. and actively using Pinterest from 9:15 a.m. to 9:16 a.m. This evidence undermined Sothman's claim she received a phone call from a student loan company, realized it was 9:12 a.m., and checked on E.S. at that time.

When she did return to the bathroom, Sothman found E.S. floating face down motionless in the bathwater. She immediately called 911 at 9:22 a.m. First responders arrived and transported the unresponsive child to the hospital. E.S. was placed on life support and later pronounced dead. Police interviewed Sothman at the hospital without giving her a *Miranda* warning. There, and in subsequent interviews, she gave varying time frames and reasons for her failure to check on her daughter. At one point, she claimed she left her daughter in the bathtub unattended for no more than two or three minutes. But she ultimately admitted in her guilty plea colloquy that the child was in the bathwater unobserved from approximately 8:45 to 8:50 a.m. until about 9:15 to 9:20 a.m.

The medical examiner determined the child's manner of death was accidental drowning. The Iowa Department of Human Services (DHS) removed the older children from the family home. Sothman retained an attorney to represent her who has been practicing law in Iowa since 1998 and has experience defending serious felony charges. He advised Sothman that she was unlikely to win at trial and unlikely to win a motion to suppress. Sothman was motivated to plead guilty because she wanted to avoid putting herself and her family through the trauma of a public trial where autopsy photos of E.S. would be viewed and

because DHS would not return her two children to their father's care while she remained home before her incarceration.

Her attorney negotiated a prearraignment plea agreement on her behalf with the Marion County Attorney. Sothman's attorney advised her that after she served a few months in prison, she could file a motion to reconsider requesting a suspended sentence and informed her that as part of the plea bargain, the State agreed not to resist that motion. Sothman's attorney was wrong. Sothman was ineligible for a suspended sentence because she pleaded guilty to a forcible felony.

On August 6, Sothman pleaded guilty in open court to one count of child endangerment resulting in death, a class "B" felony, in violation of Iowa Code sections 726.6(1)(*a*), 726.6(3), and 726.6(4) (2016). The parties informed the district court of the plea agreement under which the State agreed not to charge Sothman with murder in the first degree under a theory of indifference to human life, in violation of section 707.2(1)(*e*), or other child endangerment crimes. But the proposed motion to reconsider her sentence was not disclosed to the court. The court informed Sothman she would be sentenced to an indeterminate fifty-year prison term with no mandatory minimum. Although Sothman's attorney had told her she would be immediately eligible for parole, the court informed her that "[i]t is up to the parole board to determine when and if you will be eligible for parole. They make those decisions, the Court does not."

The court found that her plea was made voluntarily and intelligently and that Sothman had provided a sufficient factual basis for the crime charged. The

court accepted her guilty plea, ordered a presentencing investigation, and set a date for sentencing. The court advised Sothman that she could file a motion in arrest of judgment if she wanted to challenge the plea. Sothman was incarcerated in the Marion County Jail and her surviving children were allowed to return to the family's home under their father's care.

The prosecutor and Sothman's attorney realized within a few days that she was ineligible for a suspended sentence because she pleaded guilty to a forcible felony. On August 9, her attorney met with her in jail to explain that a motion to reconsider could not result in her release from prison. They discussed setting aside her guilty plea through a motion in arrest of judgment, which the State would not resist. Alternatively, they discussed maintaining her guilty plea and seeking her release through parole. The State promised to write a letter on her behalf to the Iowa Board of Parole (BOP) recommending parole if she maintained her guilty plea.

Meanwhile, Sothman's attorney located a fiscal note from Iowa's Fiscal Services Division of the Legislative Services Agency (LSA) that stated that "[t]he average length of stay for a person convicted of child endangerment resulting in the death of a child or minor under current law is 55.4 months, or 4.6 years." H.F. 2064, 86th G.A., 1st Sess., fiscal note (Iowa Mar. 17, 2016), https://www.legis.iowa.gov/docs/publications/FN/770356.pdf [https://perma.cc/44WG-U9LD]. He shared that information with Sothman and identified his source. On August 16, Sothman's attorney wrote her a letter documenting his advice. The letter stated in full,

I've had some more conversations with [the] Marion County Attorney, regarding sentencing in this case. As we've discussed previously, Child Endangerment Resulting in Death of a Child is a Forcible Felony under Iowa Code Section 702.11. As a result, the State's position is that you are not eligible to have your sentence reconsidered, since the Judge cannot impose a suspended sentence on a Forcible Felony. With a Forcible Felony, you must be committed to the custody of the Director of the Department of Corrections, and then paroled. The County Attorney has indicated that if you agree not to file a Motion in Arrest of Judgment, seeking to have your guilty plea set aside in this case, he will write a letter of recommendation in support of your parole after 6 months in prison. As we've discussed, having a letter from the County Attorney would definitely be of assistance to us in trying to secure your early release on parole.

The purpose of this letter is to confirm the discussions that I've had with the County Attorney in this regard, so that you are aware of what has been going on, and further to explain your legal rights in this case. As you know, you plead guilty to Child Endangerment Resulting in Death, which is punishable by a penalty of up to 50 years of incarceration in prison. *We've also discussed that typical individuals, pursuant to a Legislative Services Study, serve on average 4.6 years on this type of sentence.* There is no minimum sentence and you are eligible for parole immediately upon your sentencing.

If we file a Motion in Arrest of Judgment, we could argue that your guilty plea should be set aside, on the grounds that the State had made promises that they would not resist reconsideration when reconsideration is not possible. The Court would likely set aside your guilty plea and then we'd have the opportunity to try and negotiate a new plea or defend you on these charges, if possible.

If you agree to not file a Motion in Arrest of Judgment then we'll proceed with sentencing and completion of the PSI report. Once you are sentenced, you will have the opportunity to seek parole while in prison and the State will file a letter on your behalf, recommending parole. As we've discussed, I believe you would be an excellent candidate for parole but you must understand that there are no guarantees on either a Motion to Reconsider or parole request. The ultimate decision is out of your hands.

If you still want to proceed with your guilty plea, and seek early parole as opposed to filing a Motion in Arrest of Judgment and trying to have your guilty plea set aside, I would ask you to sign this letter and then return it to me. That way, I will know what your

decision is and will have documentation of that in my file if necessary at a later point. If you have any questions about these matters, please let me know.

(Emphasis added.) Sothman signed the letter on August 18 over printed language that stated:

> I understand my legal rights and have had the opportunity to discuss the same with my attorney and I am satisfied with the advice and legal counsel I have been given. I desire to seek parole in this matter and not file a Motion to Reconsider, and do not wish to challenge my guilty plea on the basis of the information contained within this correspondence.

On September 23, Sothman appeared for her sentencing hearing. The proceedings began in chambers with the judge, the lawyers, a court reporter, and Sothman present. Her attorney and the prosecutor informed the court that they wanted to "clarify the record" because they had mistakenly believed during the prior negotiations leading to Sothman's guilty plea that she could file a motion to reconsider her sentence to seek her release from prison on probation. They explained to the judge that after the court accepted her guilty plea, they realized probation was not allowed for this forcible felony. They asked to make a record, and the court placed Sothman under oath. Sothman was not asked to waive any right to conduct her examination in open court and was not told that was an option.

In chambers, Sothman, examined first by her attorney, testified that her questions about the change in circumstances had been answered in their prior discussions, that she understood that she will be sentenced to an indeterminate term for up to fifty years of incarceration with no mandatory minimum and will be eligible for parole, and that the district court would not be granting parole

and she would have to go through the BOP. The judge then engaged Sothman in a brief colloquy:

> [THE COURT:] Well, let me bottom line the question: You understand that the Court has no choice but to sentence you to prison?
>
> SOTHMAN: I do understand that.
>
> THE COURT: And you're accepting of that sentence, based on the circumstances of your case?
>
> SOTHMAN: I do understand that, yes ma'am.

Next, under cross-examination by the prosecutor, Sothman testified that she understood she could file a motion in arrest of judgment to withdraw her guilty plea but has chosen not to do so because she believes it is in her best interest to go forward with her guilty plea.

The court then conducted the sentencing hearing in open court. There were about fifteen to twenty people in the audience, including friends, family, church members, and the press. The district court sentenced her to an indeterminate term of incarceration not to exceed fifty years. Sothman was transported to the Iowa Correctional Institution for Women in Mitchellville. She did not appeal her conviction.

Sothman's attorney advised her to begin exploring the parole process upon her arrival in prison and to let him know when she was ready to proceed with a parole application. Sothman's counselor at the prison recommended Sothman look at reconsideration because it would be ten months before Sothman could apply for parole and the prison would not initially support her for parole due to

the seriousness of her offense. Sothman was told she would probably be in prison for at least seven to eight years.

As promised in the plea agreement, on August 4, 2017, the county attorney wrote a letter to the BOP urging the release of Sothman. He relied on the BOP's 2016 Annual Report, which showed "the average length of incarceration of other violent class B sentences is 86 months." The county attorney suggested that Sothman and society would "be better off with [Sothman] being released sooner" than the average seven or eight years sentence for other violent class "B" felonies.

The Iowa Department of Corrections (DOC) has not yet supported Sothman's annual review for probation. Sothman has been a model inmate. According to Sothman, the DOC did not support her in 2017 because she had not been at the prison long enough, in 2018 because she had not taken the necessary classes, and in 2019 because the DOC failed to complete her home check. According to her counselor, the prison did not support Sothman's parole applications because of the seriousness of the offense.

Sothman retained new counsel and on April 26, 2019, filed her application for postconviction relief (PCR) alleging that she received ineffective assistance of counsel because her plea counsel misinformed her about the parole process and that her right to a public proceeding was violated. The district court characterized Sothman's application as two ineffective-assistance-of-counsel claims.[2] On October 2, at her PCR trial, Sothman testified that her

---

[2]The judge who presided over the postconviction hearing is not the judge who accepted Sothman's plea and sentenced her.

understanding was that after pleading guilty, she would "then be immediately transported to the prison and be eligible for parole and be home within a year." She had no previous interactions with the criminal justice system to inform her differently. She testified that she did not understand the difference between probation through reconsideration of a sentence and parole. If she had known that she was "not actually eligible for that quick release, either through reconsideration or parole" she would not have pleaded guilty to child endangerment resulting in death. She also noted that her father came to court for her sentencing and missed the opportunity to hear the in-chambers proceeding.

Sothman wanted to get her kids back to their father and to join them as soon as possible. She testified that the State's promise not to charge her with other offenses and the evidence of when she accessed Pinterest did not affect her decision to plead guilty. Rather, she chose to plead guilty to avoid delaying her prison sentence and her ultimate return home, stating,

> I don't remember that so much as it being -- what I remember -- what I remember was that if we were to set the plea aside, we would have to go through all of this all over again and come back to -- basically if we were to set it aside, it would be delaying what was coming, so I should just go ahead and do it now and be able to move on and go through the steps for parole to be able to get things set in motion so that the family could, again, come back together.

She acknowledged there was a real good chance that she was going to be convicted of child endangerment and avoiding trial would be better for her family by ensuring they did not have to relive the traumatic event.

Her counselor testified that the DOC's decision to support an inmate for parole and the BOP's decision to grant parole are individualized determinations, that there is no legal reason why the BOP could not parole Sothman the next day, and that it would be possible—but not probable—for someone with the same sentence to be paroled earlier than her.

Sothman's counsel at her PCR trial offered into evidence a letter to him he obtained from an administrative law judge (ALJ) dated September 18, 2019, that addressed earned-time credits and parole. The letter stated in full:

> Child Endangerment Resulting in Death 726.6(4) is classified as a violent assault. Once they enter [the Iowa Medical Classification Center Correctional Facility], the sentence is given 1.2 day[s] credit for every day served. Fifty years comes out to be roughly 22.7 years. They are eligible for annual reviews and as long as they participate and complete institutional programs, the Department of Corrections can make a recommendation to the Board for release. If any discipline actions occur while incarcerated, they can lose time which would extend the 22.7 years.

> Without knowing how much jail credit, the rough calculation on earned time on a 50-year sentence is approximately 22.7 years. If discipline action is taken while in prison, earned time can be taken, extending the 22.7 years. If they lose all earned time, or dead time (while on supervision) the length of sentence would be 50 years.

> The Board likes to see a period of supervision. They like to see progress by the offender while they are incarcerated.

> A release is discretionary, therefore, the exact percentage served is unknown. However, based on releases granted, an average is calculated. Depending on behavior in prison, one could serve as little as 30% or as much as 100% of their sentence. The board looks at factors set out in our Administrative Rules, IAC- 205—8.10.

The ALJ did not testify. Thirty percent of 22.7 years is 6.81 years.

Sothman's plea counsel testified that the plea deal was a good resolution because the facts and the law were not on her side, the State made a huge

charging concession, and it helped minimize public attention. He said apart from reviewing the LSA fiscal note, he did no additional research into the average length of incarceration for child endangerment resulting in death. No witness testified that plea counsel estimating a defendant's likely release on parole should contact an ALJ in the prison system rather than rely on an LSA report compiling average release times.

Sothman's plea counsel also testified he told Sothman that the judge wanted to meet with the parties and ask her a few questions on the record but he did not believe he discussed with Sothman that the judge could ask questions either "in the courtroom or back in chambers." He did not object because reporters were in the courtroom, the proceedings in chambers confirmed "for the judge that this decision had been made by Ms. Sothman knowingly, intelligently, and voluntarily," and she was sentenced in open court.

On October 22, the district court denied Sothman's application for PCR after determining that she did not receive incorrect advice regarding her eligibility for parole and, assuming her right to a public trial was violated, she was unable to show prejudice for either claim of ineffective assistance of counsel. The district court determined Sothman failed to prove prejudice, stating:

> Ms. Sothman testified at [the postconviction] trial that she would not have pled guilty if she knew that her sentence couldn't be reconsidered or that she wouldn't be paroled quickly. What Ms. Sothman never testified to at trial was that she would have insisted on taking the [criminal] case to trial. Ms. Sothman's focus at the time leading up to the guilty plea revolved around avoiding publicity, quick resolution to the case, and return of her children to their home with their father. Even at the time of her decision not to file a motion in arrest of judgment, Ms. Sothman was focused on the DHS case and continuing with sentencing was the quickest way to

get home with the kids. Ms. Sothman further testified that she remembered that if she set aside her plea she would have to go through it all over again and that would delay what was coming. She wanted to set in motion parole to get her family back together.

The evidence against Ms. Sothman was strong. She was the only adult at home with the children. She placed the young child in the bathtub. She acted in a manner that created a substantial risk to the child's physical safety resulting in the child drowning. Ms. Sothman left a [thirteen] month old child in a bathtub containing water, for approximately 25–35 minutes without any supervision. During that time Ms. Sothman spoke on the phone with her mother, sent and received text messages, answered a phone call and was on the social application Pinterest. During the trial of this case Ms. Sothman admitted that a jury wouldn't have viewed the facts in a positive light and agreed that there was a really good chance she would have been found guilty at a trial. With the facts against her Ms. Sothman took the benefit of pleading guilty to avoid the publicity of trial, of putting her children and family through a trial and saving herself from having to hear and view the evidence against her at trial. By pleading guilty Ms. Sothman also avoid[ed] other potential charges and facilitated her children returning to their home and care of their father. Ms. Sothman has failed to prove that she would have insisted on going to trial in this case and therefore did not suffer prejudice.

Sothman appealed, and we transferred the case to the court of appeals. The court of appeals affirmed, finding "Sothman's misunderstanding of the potential parole timeline is not sufficient to provide a basis for a claim of ineffective assistance." The court of appeals further determined that Sothman failed to prove she was prejudiced by the in-chambers proceedings or that the process was fundamentally unfair to warrant structural error review. Sothman applied for further review and we granted her application.

## II. Standard of Review.

"We generally review a district court's denial of an application for postconviction relief for errors at law." *Doss v. State*, 961 N.W.2d 701, 709 (Iowa

2021). "However, a PCR application alleging ineffective assistance of counsel raises a constitutional claim, and '[w]e review postconviction proceedings that raise constitutional infirmities de novo.'" *Krogmann v. State*, 914 N.W.2d 293, 306 (Iowa 2018) (alteration in original) (quoting *Castro v. State*, 795 N.W.2d 789, 792 (Iowa 2011)).

On de novo review, "we give weight to the lower court's findings concerning witness credibility." *King v. State*, 797 N.W.2d 565, 571 (Iowa 2011) (quoting *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001) (en banc)). But we are not bound by the lower court's determination. *State v. McCoy*, 692 N.W.2d 6, 21 (Iowa 2005).

### III. Analysis.

We must decide whether Sothman proved her plea counsel provided ineffective assistance of counsel in his advice regarding her likely release on parole or by allowing her second plea hearing to be conducted in chambers rather than in open court. We begin our analysis with the applicable law and then address each claim in turn.

"To establish ineffective assistance of counsel, [Sothman] must demonstrate [her] plea counsel 'failed to perform an essential duty' that resulted in prejudice." *Doss*, 961 N.W.2d at 709 (quoting *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006), *superseded in part by statute on other grounds*, 2019 Iowa Acts ch. 140, §§ 28, 31 (codified at Iowa Code §§ 814.6(1)(*a*), .7 (2020)), *as recognized in State v. Tucker*, 959 N.W.2d 140, 153–54 (Iowa 2021)). "Counsel breaches an essential duty when counsel makes such serious errors that counsel is not

functioning as the advocate the Sixth Amendment guarantees." *Id.* (quoting *State v. Ross*, 845 N.W.2d 692, 698 (Iowa 2014)). "We presume counsel acted competently but that presumption is overcome 'if we find [Sothman] has proved [her] counsel's performance fell below the normal range of competency.'" *Krogmann*, 914 N.W.2d at 306 (quoting *State v. Harris*, 891 N.W.2d 182, 186 (Iowa 2017)). "If the claim lacks prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently." *Ledezma*, 626 N.W.2d at 142.

In *Hill v. Lockhart*, the United States Supreme Court adopted the *Strickland* prejudice standard for challenges to guilty pleas based on ineffective assistance of counsel. 474 U.S. 52, 58 (1985).

> Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another. Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense.

*Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 693 (1984)). Importantly, the Court noted that requiring a showing of prejudice served "the fundamental interest in the finality of guilty pleas." *Id.*

> Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice. The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas. Moreover, the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea.

*Id.* (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)).

In *Irving v. State*, we adopted *Hill*'s prejudice standard in the context of a guilty plea. 533 N.W.2d 538, 541 (Iowa 1995). "[T]o satisfy the prejudice requirement, [Sothman] must show that there is a reasonable probability that, but for counsel's errors, []she would not have pleaded guilty and would have insisted on going to trial." *Doss*, 961 N.W.2d at 709 (first alteration in original) (quoting *Straw*, 709 N.W.2d at 138); *see also Irving*, 533 N.W.2d at 541.

**A. Parole Advice.** Sothman alleges she received ineffective assistance of counsel because her plea counsel incorrectly advised her on the consequences of her plea agreement. "This claim of ineffective assistance does not involve trial tactics, strategies, or other judgment calls that we do not ordinarily second-guess." *Meier v. State*, 337 N.W.2d 204, 206 (Iowa 1983) (en banc). Rather, her claim alleges her plea counsel breached an essential duty by failing to correctly advise her on when she would realistically be considered by the BOP for parole.

A guilty plea must be made "voluntarily and intelligently." Iowa R. Crim. P. 2.8(2)(*b*). A district court is required to ensure that "the defendant understands the direct consequences of the plea" and "is not required to inform the defendant of all indirect and collateral consequences of a guilty plea." *State v. Carney*, 584 N.W.2d 907, 908 (Iowa 1998) (en banc) (per curiam). Even though a criminal "defendant need not be informed of all indirect and collateral consequences of his [or her] plea[,] . . . that does not leave a court, or an attorney, free to misinform a defendant regarding collateral consequences of his [or her] plea." *Meier*, 337 N.W.2d at 207; *see also Stevens v. State*, 513 N.W.2d 727, 728

(Iowa 1994) (per curiam) ("The rule is well established that defense counsel does not have a duty to inform a defendant about the collateral consequences of a guilty plea, but commits reversible error if counsel misinforms the defendant as to these consequences."). "Parole eligibility is a collateral consequence of a plea." *Stevens*, 513 N.W.2d at 728. So too is the BOP's exercise of its discretion whether to grant parole.

Inaccurate advice on collateral consequences can support an ineffective-assistance claim. In *Meier v. State*, an attorney breached an essential duty because he advised his client that the State would pursue a charge with a five-year mandatory minimum sentence if he did not accept the plea deal and failed to advise that credit for good time served could reduce the mandatory minimum. 337 N.W.2d at 206–07 (relying on recent changes to Iowa Code section 246.38 and section 246.43 regarding credit for good time served). *But see Stevens*, 513 N.W.2d at 728 (concluding an attorney did not breach an essential duty because he "explained how good time credits work to reduce sentences" and "did not have a duty to explain specifically that a mandatory minimum sentence, like any other sentence, was subject to reduction for good time"). Sothman's plea counsel correctly advised her that she would be immediately eligible for parole. Sothman argues her plea counsel gave her bad advice about the timing of her likely release on parole and that the 4.6-year average time served was wrong.

In *Doss v. State*, the criminal defendant alleged in his application for PCR that he received ineffective assistance of counsel because he was not "adequately" informed of the terms and conditions of his lifetime special parole

sentence. 961 N.W.2d at 706–07. He claimed that his counsel told him "[a]s long as [he] followed the actual law, [he] would be okay" and stated that he was unaware that he would have to abide by additional rules. *Id.* at 708 (first alteration in original). The defendant's claims were undermined by the record of his sentencing hearing. *Id.* at 713. The record showed that his counsel stated the defendant would have to go through a sex-offender-treatment-program (SOTP) that is "very strenuous and very rigorous." *Id.* And the court emphasized that the defendant "will also be subject to whatever further terms and conditions that [his] probation officer feels are appropriate," he "will be 'on probation for the rest of his life,'" and he could "end up in prison if he 'fail[ed] to participate appropriately' in SOTP." *Id.* (second alteration in original). Thus, we concluded he was not misled by his counsel and his counsel did not breach an essential duty. *Id.* at 713–14.

Similarly, any inaccuracies in Sothman's plea counsel's advice did not rise to the level of breach of an essential duty. The record does not support Sothman's claim that she was advised that she would be home to her family within a year. To the contrary, Sothman's plea counsel advised her "there are no guarantees" on a parole request and told her 4.6 years was the average time served based on an LSA fiscal note—a government document—that he disclosed to her and quoted accurately. The district court made clear to Sothman that the BOP decided when she would be paroled, not the court.

In our view, her plea counsel reasonably relied on the LSA fiscal note as a credible source in advising Sothman. In 2016, the legislature amended the

penalty for certain alternatives for child endangerment resulting in death. *See* 2016 Iowa Acts ch. 1104, §§ 1–2, 5–8 (codified at Iowa Code §§ 124.413, 802.2B, 901.11, 901.12, 902.12 (2017)). The accompanying fiscal note, dated March 17, 2016, states that "[t]he average length of stay for a person convicted of child endangerment resulting in the death of a child or minor under current law is 55.4 months, or 4.6 years." H.F. 2064, 86th G.A., 1st Sess., fiscal note (Iowa Mar. 17, 2016).

Fiscal notes are an essential part of the legislative process. *See* Joint Rules of the Senate and House, H.R. Con. Res. 6, 86th G.A., R. 17 (Iowa 2015), https://www.legis.iowa.gov/docs/publications/JR/644150.pdf [https://perma.cc/AXH4-E4A6]. When preparing a fiscal note for proposed legislation, "[t]he LSA uses the most accurate and reliable information whenever the information is received" and "is not obligated to use any data provided by a department and seeks multiple and independent sources of financial information." Legis. Servs. Agency, *The Iowa Legislature: Fiscal Note Information Guide* 15 (2019), https://www.legis.iowa.gov/docs/publications/HELP /1035134.pdf [https://perma.cc/7GV7-AHWX]. Because lawmakers reasonably rely on such fiscal notes in enacting sentencing legislation, we will not second-guess her plea counsel's reliance on the same source. *See Ledezma*, 626 N.W.2d at 142 ("[W]e begin with the presumption that the attorney performed competently . . . [and] we avoid second-guessing and hindsight." (citations omitted)).

Sothman's plea counsel relied on the LSA fiscal note's 4.6-year average without interviewing prison counselors, administrative law judges, or other sources. We are not convinced that professional norms required plea counsel to look beyond the LSA's fiscal note. *Ledezma*, 626 N.W.2d at 142 ("[W]e measure the attorney's performance against 'prevailing professional norms.'" (quoting *Strickland*, 466 U.S. at 688)). Sothman's PCR counsel put on no expert testimony or other evidence that a reasonably competent plea counsel would have looked beyond the LSA's 4.6-year average and interviewed an ALJ.

Sothman's plea counsel told her there was no guarantee as to her release date on parole. Hindsight is twenty-twenty. At the time of the PCR trial, Sothman had not yet served more than 4.6 years. Presently, it is possible that she will be paroled next year. She has been a model inmate with no loss of earned time. The prosecutor's letter to the BOP and Sothman in her PCR testimony reported parole in seven or eight years as the average. The ALJ's letter focused on earned-time credits that would reduce her fifty-year sentence to 22.7 years and indicated she may be paroled after serving thirty percent of her sentence, or 6.81 years, such that her release could be imminent. The district court made no finding that fifteen years is more likely. Nor do we.

The dissent relies on *Strader v. Garrison*, where the plea counsel erroneously told his client he would eligible for parole "several years sooner than the regulations permitted." 611 F.2d 61, 63 (4th Cir. 1979) (vacating guilty plea on habeas review based on ineffective assistance of counsel). *Strader* addressed plea counsel's mistake of law as to a date certain—his client's *eligibility* for

parole. Parole eligibility is set by statute. *See, e.g.*, Iowa Code § 902.11. But legal eligibility for parole is distinct from the BOP's discretion whether, and when, to grant parole, once eligible. The *Strader* court stated, "This was not just a prediction which was not realized. The lawyer could have discovered the applicable rule had he looked in the published material, but he did not." 611 F.2d at 63. By contrast, Sothman's counsel did not misadvise her on the law but rather correctly told her she was immediately eligible for parole, while her ultimate release on parole was in the hands of the BOP. To the extent his advice was too optimistic, it is "just a prediction which was not realized." *Id.*

In any event, *Strader* preceded *Hill v. Lockhart,* which now requires a showing of breach and prejudice to vacate a guilty plea on habeas or postconviction review, not merely inaccurate advice as to the defendant's release date. *See* 474 U.S. at 56–57. The same federal circuit that decided *Strader* later retreated from that decision, stating, "An attorney's 'bad guess' as to sentencing does not justify the withdrawal of a guilty plea and is no reason to invalidate a plea." *Little v. Allsbrook,* 731 F.2d 238, 240–41 (4th Cir. 1984) (affirming conviction despite a ten-year difference between the defendant's understanding from plea counsel and actual parole eligibility).

The dissent also relies on *Beavers v. Saffle*, where the United States Court of Appeals for the Tenth Circuit granted a habeas petitioner a hearing to challenge his guilty plea because his plea counsel advised him it would take between ten to twelve years to make parole when the average time in fact was 22.5 years. 216 F.3d 918, 921, 925–26 (10th Cir. 2000). *Saffle* is distinguishable

as involving parole *eligibility* and because plea counsel subsequently testified he gave bad advice. *Id.* at 920, 925. Sothman's plea counsel made no such admission, and he reasonably relied on the LSA fiscal note showing an average of 4.6 years served. In any event, as noted below, in a subsequent appeal, the Tenth Circuit affirmed Saffle's guilty-plea based conviction based on a lack of *Strickland* prejudice. *Beavers v. Saffle*, 41 F. App'x 288, 289–90, 292 (10th Cir. 2002).

Nor is the dissent's reliance on *Howard v. State*, 783 S.W.2d 61, 62 (Ark. 1990), helpful to Sothman. In that case, plea counsel erroneously relied on outdated statutes (a clear mistake of law) in advising the defendant that upon pleading guilty, she may only serve ninety days in prison, instead of the sixty-year sentence imposed. *Id.* Under the applicable statutes, early release was not available. *Id.* Again, that case turned on plea counsel's legal error as to parole *eligibility*, not a prediction as to when her discretionary release on parole is likely.

As the State argued, "[T]he defendant's complaints are less about her attorney's conduct than they are about her unrealistic expectation that she deserved immediate parole after letting her child drown in the bath tub[;] . . . [u]nrealistic expectations are no basis for legal relief." We agree with the district court and court of appeals that Sothman failed to prove her plea counsel breached an essential duty in his advice on parole, and we affirm on that ground. A contrary holding would have a chilling effect on plea counsel's willingness to offer advice estimating the time for release on parole, a matter of great interest to their clients and quintessentially within the lawyer's advisory role.

We also agree with the district court and the court of appeals that Sothman failed to prove prejudice. The district court noted that Sothman "never testified . . . that she would have insisted on taking the case to trial." We do not require magic words, but we do require a showing that but for the challenged plea advice, Sothman would have withdrawn her guilty plea and taken the case to trial. She had no realistic defense to her crime of conviction. She left her thirteen-month-old child unattended in the bathtub for roughly thirty minutes, and the child drowned. The State agreed not to pursue additional charges, including first-degree murder with a mandatory life sentence. Sothman wanted to avoid putting her and her family through the trauma of a public trial. She also wanted her remaining two young children to return to their home and care of their father as soon as possible, which DHS would not allow before her incarceration. The district court heard Sothman's live testimony on this crucial issue, and we give weight to its credibility determinations. *See King,* 797 N.W.2d at 571.

On our de novo review, we agree with the district court that Sothman failed to show there was a reasonable probability she would have withdrawn her guilty plea and taken her case to trial had she been advised to expect a much longer wait for parole. That finding is fatal to her prejudice claim. *See Doss,* 961 N.W.2d at 709 (requiring proof the defendant would have taken the case to trial); *see also Beavers,* 41 F. App'x at 289–90, 292 (concluding a defendant did not show *Strickland* prejudice because it was not "gross misadvice" for his attorney to estimate the defendant would be eligible for parole in ten to twelve years when it

would actually be fifteen years and defendant did not show he would have taken his case to trial but for that advice); *Dempsey v. State*, 860 N.W.2d 860, 871 (Iowa 2015) ("Notwithstanding these inaccuracies, and in no way minimizing the significance of a year in prison, we cannot conclude counsel's errors with respect to the sentencing consequences [the defendant] faced under either the trial information or the first plea offer—in each instance a difference of one year—were so great as to rise to the level necessary to establish prejudice.").

In arguing that Sothman established prejudice, the dissent relies on *Diaz v. State*, where we held that the defendant, an unauthorized alien, was allowed to vacate his guilty plea to forgery because his plea counsel "failed in his duty to advise his client of the direct and severe immigration consequences" of automatic and permanent removal. 896 N.W.2d 723, 725 (Iowa 2017). "This was a 'truly clear' consequence [of his plea], and counsel had a duty to tell his client about it." *Id.* at 734 (Mansfield, J., concurring specially) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010)). We found that "the evidence of [his] guilt is not overwhelming" and that Diaz could make a rational choice to "roll the dice" and go to trial for reasons including that the State had to prove his "specific intent to defraud or injure another" while Diaz "maintained he believed the identification card he obtained in Texas was legitimate." *Id.* at 733 (majority opinion). By contrast, Sothman's plea counsel committed no equivalent blatant omission in his advice about her parole prospects, and unlike Diaz, Sothman lacked a realistic possibility of acquittal. And the procedural posture matters. *Diaz* was a direct appeal by the State from a district court ruling *allowing* the defendant to

withdraw his guilty plea on that ground. *Id.* at 725. We affirmed that ruling on his direct appeal. *Id.* Sothman too was offered the chance to withdraw her plea, but she declined the offer, waited several years to challenge her plea in this postconviction proceeding, and now appeals from an *adverse* district court ruling.

Nor does the dissent's reliance on *Garmon v. Lockhart*, 938 F.2d 120, 122 (8th Cir. 1991), move the ball forward. That case turned on plea counsel's mistake of law as to parole eligibility. *Id.* at 120–21. Counsel erroneously advised Garmon that he would be eligible for parole in five years. *Id.* at 121. That advice was off by a decade—the client actually was not eligible until fifteen years. *Id.* at 120–21. Both breach and prejudice were crystal clear. But getting parole eligibility wrong by ten years differs from predicting the timing of a client's discretionary release.

The dissent also touts the prosecutor's remarks at the guilty plea and sentencing hearings and in his promised letter to the BOP urging Sothman's release on parole due to the accidental nature of this tragic death. Taken in context, the prosecutor's remarks downplaying her culpability do not show Sothman had a good case to roll the dice and take to trial. Accidental drowning fits Sothman's crime of conviction: child endangerment resulting in death. She had no factual or legal defense. Having reached the plea agreement on that charge, the prosecutor was obligated to advocate for its acceptance and was contractually required to write the BOP to urge her release on parole. *See State v. Beres*, 943 N.W.2d 575, 582 (Iowa 2020) (noting plea bargains are akin to

contracts); *State v. Lopez*, 872 N.W.2d 159, 173 (Iowa 2015) (discussing State's obligation to advocate for the plea agreement). And the elected county attorney, in his oration before a crowded courtroom and media, presumably took the opportunity to explain to an outraged public why he did not pursue a murder charge for the death of this child.

We affirm the district court's finding that Sothman failed to prove prejudice.

**B. Right to a Public Hearing.** Sothman's second ground for reversal argues her plea counsel was ineffective for failing to assert her right to have a "plea proceeding" in open court or having her waive that right. The district court took Sothman's guilty plea in open court on August 6, 2016. But just before commencing her sentencing hearing in open court on September 23, counsel met with the judge in chambers where Sothman was placed under oath and questioned on the record about her choice to plead guilty. Her plea counsel did not object to that in-chambers proceeding, or elicit Sothman's consent to proceed in chambers rather than in open court. Regardless of the nature of the in-chambers proceeding, we agree with the district court, court of appeals, and the State that she must prove prejudice and failed to do so. We begin our analysis with an overview of the right to a public trial or hearing.

A defendant's right to a public trial is protected by both the United States and Iowa Constitutions. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."); Iowa Const. art. I, § 10 ("In all criminal prosecutions . . . the accused shall have a right to a

speedy and public trial . . . ."). "The public-trial right also protects some interests that do not belong to the defendant. After all, the right to an open courtroom protects the rights of the public at large, and the press, as well as the rights of the accused." *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1910 (2017); *see also Des Moines Reg. & Trib. Co. v. Iowa Dist. Ct.*, 426 N.W.2d 142, 144 (Iowa 1988) ("The right to an open public trial is not solely in the possession of the accused, the public, or the press."). Indeed, "there can be little doubt that the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public." *Waller v. Georgia*, 467 U.S. 39, 46 (1984). The public has an interest in monitoring criminal cases such as Sothman's involving the accidental death of a young child and the resulting punishment. Not surprisingly, fifteen to twenty persons including the press sat in the courtroom gallery for her sentencing.

"The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power." *In re Oliver*, 333 U.S. 257, 270 (1948). "In addition to ensuring that [a] judge and [a] prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury." *Waller*, 467 U.S. at 46. To determine if "a constitutional right of public access applies to a certain criminal proceeding," we "must consider whether the place and process have historically been open to the press and general public" and "whether public access plays a significant positive role in the functioning of the particular process in question." *Des Moines Reg. & Trib. Co.*, 426 N.W.2d at 145. The State and

Sothman disagree whether the public trial right extended to the district court's in-chambers proceeding conducted immediately before her sentencing in open court.

In *Waller v. Georgia,* the Supreme Court extended the right to a public trial to pretrial suppression hearings. 467 U.S. at 47. Conducting suppression hearings in public is important because "[a] challenge to the seizure of evidence frequently attacks the conduct of police and prosecutor." *Id.* The Court noted that a suppression hearing resembles a bench trial because witnesses are sworn in and attorneys argue on behalf of their clients and that "in many cases, the suppression hearing was the *only* trial, because the defendants thereafter pleaded guilty pursuant to a plea bargain." *Id.* (emphasis added). Notably, Sothman was questioned under oath and on the record in the September 23 in-chambers proceeding to confirm she did not seek to vacate her guilty plea, which resolved this case without a trial. In Sothman's view, what happened in chambers was tantamount to a renewed plea hearing that must be conducted in open court.

Plea hearings indeed are to be conducted in open court. Iowa R. Crim. P. 2.8(2)(*b*) ("Before accepting a plea of guilty, the court must address the defendant personally in open court . . . ."); *id.* at 2.10(2) ("If a plea agreement has been reached by the parties the court shall require the disclosure of the agreement in open court at the time the plea is offered."). This has long been the law in Iowa. *See* Iowa Code § 13800 (1931) ("The plea of guilty can only be made in open court

. . . ."). Thus, guilty plea proceedings have "historically been open to the press and general public." *Des Moines Reg. & Trib. Co.*, 426 N.W.2d at 145.

In *United States v. Haller*, the Second Circuit concluded that "there is a right of access to plea hearings and to plea agreements." 837 F.2d 84, 86 (2d Cir. 1988). Convictions based on guilty pleas are "the most common form of adjudication of criminal litigation." *Id.* The *Haller* court reasoned that plea hearings are traditionally open to the public and public access to plea hearings "serves to allow public scrutiny of the conduct of courts and prosecutors." *Id.* at 86–87. We agree. *See State v. Bearse*, 748 N.W.2d 211, 215 (Iowa 2008) ("While proper use of plea agreements is essential to the efficient administration of justice, improper use of the agreements threatens the liberty of the criminally accused as well as 'the honor of the government' and 'public confidence in the fair administration of justice.' " (quoting *State v. Kuchenreuther*, 218 N.W.2d 621, 624 (Iowa 1974))).

The fighting issue, however, is whether Sothman's September 23 in-chambers proceeding constituted another plea hearing required to be in open court. Sothman had not filed a motion in arrest of judgment and did not seek to withdraw her guilty plea. But because the court placed Sothman under oath and questioned her on the record about her decision not to withdraw her guilty plea, we conclude Sothman's counsel should have elicited her informed consent to proceed in chambers or objected and asked that the court conduct the

proceeding in open court.[3] We find that Sothman's plea counsel breached an essential duty by failing to do so.

Sothman contends she does not have to prove prejudice because the denial of her right to a public hearing is a structural error. For most errors raised on ineffective-assistance-of-counsel claims, the criminal defendant must show prejudice to be entitled to relief "because 'the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.' " *Lado v. State*, 804 N.W.2d 248, 251 (Iowa 2011) (quoting *United States v. Cronic*, 466 U.S. 648, 658 (1984)). Every "trial error" does not always "undermine the reliability and fairness of the legal proceeding." *Id.* at 252. A showing of prejudice is not required for certain ineffective-assistance-of-counsel claims that rise to the level of structural errors.[4] *Id.* Structural errors are errors that "affect[] the framework within which

---

[3]Under certain circumstances, courts may exclude the public from a proceeding when

> (1) [t]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced; (2) the closure must be no broader than necessary to protect that interest; (3) the trial court must consider reasonable alternatives to closing the proceedings; and (4) the trial court must make findings adequate to support the closure.

*State v. Schultzen*, 522 N.W.2d 833, 836 (Iowa 1994) (quoting *Waller*, 467 U.S. at 48); *see also Weaver*, 137 S. Ct. at 1909 ("[C]ourtroom closure is to be avoided, but . . . there are some circumstances when it is justified. . . . Though these cases should be rare, a judge may deprive a defendant of his right to an open courtroom by making proper factual findings in support of the decision to do so.").

[4]For ineffective-assistance-of-counsel claims, the Supreme Court has presumed prejudice when

> (1) counsel is completely denied at a crucial stage of the proceeding; (2) where counsel fails to subject the prosecution's case to meaningful adversary testing; or (3) where surrounding circumstances justify a presumption of ineffectiveness, for example, where counsel has an actual conflict of interest in jointly representing multiple defendants.

*State v. Feregrino*, 756 N.W.2d 700, 707 (Iowa 2008) (citing *Cronic*, 466 U.S. at 659).

the trial proceeds." *Krogmann*, 914 N.W.2d at 313 (quoting *Arizona v. Fulminate*, 499 U.S. 279, 310 (1991)). When prejudice is presumed, the criminal defendant does not have to prove that but for his or her trial counsel's error, "he would have obtained a different outcome." *Lado*, 804 N.W.2d at 252.

Recently, in *Weaver v. Massachusetts*, the Supreme Court declined to presume prejudice for a postconviction claim alleging ineffective assistance based on a failure to object to a public trial violation when the public was excluded during jury selection due to space limitations. 137 S. Ct. at 1906, 1912. The Court first reviewed three justifications for why an error is considered structural when the error is preserved and presented on direct appeal: (1) "if the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest," (2) "if the effects of the error are simply too hard to measure," or (3) "if the error always results in fundamental unfairness." *Id.* at 1908. The justifications are not meant to be rigid and "[a]n error can count as structural even if the error does not lead to fundamental unfairness in every case." *Id.* "The fact that the public-trial right is subject to [the *Waller*] exceptions suggests that not every public-trial violation results in fundamental unfairness," especially for the defendant. *Id.* at 1909–10. The Court noted the right to public trial protects more than just the defendant's interests and the effect of a violation is difficult to measure, which supports structural error review of preserved violations of public trial rights raised on direct appeal. *Id.* at 1910.

After the foregoing examination of violations of public trial rights when error is preserved and raised on direct appeal, the *Weaver* Court analyzed whether to require proof of prejudice arising from violations of public trial rights first raised in postconviction proceedings through an ineffective-assistance-of-counsel claim. *Id.* The Court concluded the burden on establishing prejudice was properly on the defendant in postconviction cases because failing to object had deprived the trial court and parties of "the chance to cure the violation either by opening the courtroom or by explaining the reasons for closure" and failing to raise the issue on direct appeal increased "systemic costs of remedying the error." *Id.* at 1912. The passage of time since the conviction results in witnesses losing their memories or becoming unavailable, missing or misplaced physical evidence, and delayed or lack of guidance through the appellate review process. *Id.* Additionally, " '[a]n ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial,' thus undermining the finality of jury verdicts." *Id.* (alteration in original) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)). Three justices authored or joined concurring opinions also requiring a showing of prejudice. *Id.* at 1914 (Thomas, J., concurring, joined by Gorsuch, J.); *id.* at 1916 (Alito, J., concurring, joined by Gorsuch, J.). *Weaver* is fatal to Sothman's public trial claim under the Federal Constitution.

Sothman urges us to follow the *Weaver* two-justice dissent under the Iowa Constitution. *See id.* at 1917 (Breyer, J., dissenting, joined by Kagan, J.). We disagree based on the seven-justice majority in *Weaver* and our Iowa precedent.

Sothman could have raised the public trial issue by objecting during the in-chambers proceeding. She failed to do so.

We have only recognized structural error for ineffective-assistance-of-counsel claims raised in postconviction proceedings under limited circumstances. *See, e.g., Krogmann*, 914 N.W.2d at 321–24 (involving an unlawful, total freeze of assets that impaired "the defendant's ability to be the master of his or her own defense"); *Lado*, 804 N.W.2d at 253 (dismissing a PCR for nonprosecution). "*Weaver* on its face is limited solely to postconviction claims alleging ineffective assistance for failure to assert a right to a public trial." *Krogmann*, 914 N.W.2d at 323. We are persuaded by the policy rationales in *Weaver* and *Hill* to require the defendant prove prejudice when a right-to-public-trial error was not preserved and is first raised in a postconviction-ineffective-assistance-of-counsel claim.

Sothman recognizes that "[i]t appears no other state, in consideration of its own state constitution, ha[s] declined to follow *Weaver* in a denial of a public trial where error was not preserved." Indeed, other courts are following *Weaver* to require prejudice for unpreserved public trial violations based on jury selection courtroom closures raised through ineffective-assistance-of-counsel claims. *See, e.g., Pafford v. State*, 574 S.W.3d 735, 737–38 (Ark. Ct. App. 2019) ("*Strickland* prejudice is not shown automatically. Instead, the burden is on the defendant . . . ." (quoting *Weaver*, 137 S. Ct. at 1911)); State *v. Thaniel*, 192 A.3d 804, 817 (Md. Ct. Spec. App. 2018) ("[I]t appears that the postconviction court treated this claim as if it had been a preserved claim of structural error in a

direct appeal. [The defendant's] claim was, in fact, nothing of the sort, and his total inability to show *Strickland* prejudice bars relief on this claim."); *Commonwealth v. Kolenovic*, 84 N.E.3d 781, 796, 798 (Mass. 2017) (concluding there was "no reversible error" under *Weaver* because "[the defendant] has not argued that the closure had any effect on the proceedings, nor has he pointed to any misbehavior by any prospective juror, the judge, or the parties"); *Roberts v. State*, 535 S.W.3d 789, 797, 799 (Mo. Ct. App. 2017) (applying *Weaver* "because the reason for placing the burden on [the defendant] is the same" and finding that "[h]ad [the defendant] objected to the courtroom closure, the trial court would have had the opportunity to address the situation"); *Jeremias v. State*, 412 P.3d 43, 46, 49–50 (Nev. 2018) (adopting *Weaver* under the Nevada Constitution partly because "correcting the error . . . would encourage defendants who are aware their rights are being violated to do nothing to prevent it, knowing that they can obtain a new trial as a matter of law in the event they are convicted"); *Monreal v. State*, 546 S.W.3d 718, 727–28 (Tex. Ct. App. 2018) ("We conclude the Court's reasoning in *Weaver* controls the outcome in this case. [The defendant] is not entitled to a presumption of prejudice because he raised the closed-courtroom complaint via an ineffective-assistance claim." (footnote omitted)); *In re Salinas*, 408 P.3d 344, 345, 347, 352 (Wash. 2018) (holding under both the Federal and Washington Constitutions that *"Weaver* rejects the notion that the voir dire closure in *Salinas*, even though such closure is a 'structural error,' is presumed prejudicial" because "there was no objection at trial and no assertion of a public-trial violation on direct appeal"). We hold that *Weaver*

controls Sothman's postconviction claims under article I, section 10 of the Iowa Constitution and requires her to prove she was prejudiced by the in-chambers proceeding.[5]

A contrary holding would undermine the finality of guilty pleas. Many criminal cases have included proceedings conducted in part in chambers. To allow defendants to vacate guilty pleas without proving prejudice from the in-chambers proceeding would trigger a wave of PCRs, as the State's counsel warned at oral argument. It would also lead to gamesmanship: defendants could proceed in chambers, and if they didn't like the outcome, get a second bite at the apple. In *State v. Straw*, we refused to adopt a per se rule or a structural error standard for ineffective-assistance-of-counsel claims premised on the district court failing to tell the defendant the maximum sentence he or she was facing by pleading guilty. 709 N.W.2d at 137. We did so because "if we adopted a per se rule, some defendants would grin like a Cheshire cat as we gave them a second bite at the apple—even though they committed the crime and actually knew the maximum length of punishment for the crime." *Id.* The same reasoning applies here. Convictions should not be reversed in postconviction proceedings unless the error prejudiced the defendant. *Id.* at 138.

---

[5]In *State v. Jones*, a case decided before *Weaver*, our court addressed on direct appeal the defendant's challenge to the trial court's failure to read its bench trial verdict in open court. 817 N.W.2d 11, 15–21 (Iowa 2012). We concluded the error was cured when the verdict was read in open court at a subsequent hearing on posttrial motions. *Id.* at 21. *Jones* is inapplicable when the public trial error was not preserved and is first raised in a postconviction action through an ineffective-assistance-of-counsel claim.

Sothman wanted to avoid the trauma of a public spectacle. The press was in the courtroom. That is why her plea counsel allowed her to be placed under oath in an in-chambers proceeding. Sothman fails to show the outcome would have been different in open court. We agree with the court of appeals that the in-chambers proceeding was not fundamentally unfair. We reject as speculative her claim that her father could have changed her mind if he had heard the in-chambers proceeding. *See Pafford*, 574 S.W.3d at 738 (rejecting the "conclusory assertion" that defendant was prejudiced by his family's exclusion from the courtroom during jury selection because they were "not privy to the responses of potential jurors"). Sothman's public hearing claim fails on the prejudice prong because as explained above, she failed to prove she would have withdrawn her guilty plea and taken the criminal case to trial.

**IV. Conclusion.**

For those reasons, we affirm the decision of the court of appeals and affirm the district court judgment dismissing Sothman's claims for postconviction relief.

**DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

Christensen, C.J., and Mansfield, McDonald, and Oxley, JJ., join this opinion. McDermott, J., files a dissent, in which Appel, J., joins.

**McDERMOTT, Justice (dissenting).**

We can trust that defendants in criminal cases—whatever their potential challenges in understanding the nuances of criminal procedural rules or defensive legal strategies—will readily understand a lawyer's statements about one subject: how long they should expect to be imprisoned if convicted. Anna Sothman understood her lawyer when he told her—repeatedly, and in writing—that the average period of incarceration for her offense is 4.6 years. But the actual *best-case* scenario, according to the Iowa Board of Parole, involved her serving more than three times that amount—15 years. What's more, her lawyer led her to believe that she should expect to be released from prison even sooner than the average based on the circumstances of her case.

Because her lawyer severely misinformed her, Sothman misunderstood the consequences of her guilty plea, which she would not have entered had she been advised adequately. Yet having established, in my view, a clear violation of her constitutional right to the effective assistance of counsel, she obtains no relief from our court. I must respectfully dissent.

I.

A defendant's right to the "effective assistance of competent counsel" under the Sixth Amendment of the United States Constitution extends to the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). Sothman claims that her lawyer provided ineffective assistance in two respects: (1) by providing her incorrect

information about the consequences of her guilty plea, and (2) by failing to object to an on-the-record private hearing in the judge's chambers that tainted the public sentencing hearing in open court that she was entitled to.

Criminal defendants surrender important constitutional rights by pleading guilty. Due process thus requires that defendants who enter guilty pleas do so "voluntarily and intelligently." *State v. Philo*, 697 N.W.2d 481, 488 (Iowa 2005). Entering a guilty plea voluntarily and intelligently means that the accused "has a full understanding of the consequences of a plea." *Id.* (quoting *State v. Kress*, 636 N.W.2d 12, 21 (Iowa 2001)).

A "guilty plea cannot be a conscious, informed choice," we have said, "if the accused relies upon counsel who performs ineffectively in advising him regarding the consequences of entering a guilty plea and of the feasible options." *Saadiq v. State*, 387 N.W.2d 315, 325–26 (Iowa 1986) (quoting *Hawkman v. Parratt*, 661 F.2d 1161, 1170 (8th Cir. 1981)). To prove ineffective assistance of counsel, Sothman must prove by a preponderance of the evidence (1) that her lawyer failed to perform an essential duty and (2) that she was prejudiced by her lawyer's failure. *State v. Biddle*, 652 N.W.2d 191, 203 (Iowa 2002).

### A.

A word, first, about the tragedy that gave rise to this appeal. Every party to this case—the State, the medical examiner, Sothman herself—has acknowledged that the child's death was a tragic mistake. The State characterized it as "a lapse in judgment" in which "unfortunately, on one day this year in Pella, Iowa, the universe aligned" with fatal consequences. The

medical examiner, for its part, determined the child's cause of death was "accidental drowning." And Sothman, a mother of three with no criminal history and no evidence of being anything other than a loving, attentive mother save for this one fateful interval, at all times described her daughter's drowning as a horrific accident.

The negligent act that gave rise to this particular crime helps explain why the State was willing to permit Sothman to serve only six months in prison before being resentenced, at which point Sothman likely would have been released from prison. It was at that time, under the belief that she would be resentenced after six months, that Sothman pleaded guilty. Only afterward (after Sothman's guilty plea and the start of her incarceration) did the lawyers realize that, because her crime was a "forcible felony," she would *not* be eligible for resentencing after six months but instead would be subject to release only by action of the parole board.

Under her plea agreement, Sothman pleaded guilty to child endangerment resulting in death, a class "B" felony. *See* Iowa Code § 726.6(1)(*a*), (3)–(4) (2016). The conviction came with a maximum indeterminate sentence not to exceed fifty years in prison and $150,000 in restitution. *Id.* §§ 726.6(4), 910.3B.

### B.

The "essential duty" that Sothman's lawyer failed to perform relates to the information he provided about parole. There are two parts to this failure. First, and most obviously, is that the lawyer provided Sothman with incorrect information about the average length of incarceration that defendants serve

before being granted parole. Second, and related, is that her lawyer consistently emphasized her likelihood of serving less than the (incorrect) average length of incarceration.

Sothman's lawyer informed her that the average length of incarceration for her crime was 4.6 years. But not long after her incarceration began, Sothman learned that she couldn't even apply for parole until after serving almost a year, let alone have any realistic chance of being released in that time. A letter from an Iowa Board of Parole administrative law judge to Sothman's new lawyer stated that the *maximum* earned-time credits that an inmate in Sothman's position could receive would reduce the 50-year sentence only to 22.7 years. To put it into perspective, when Sothman entered her guilty plea, her surviving children were three and four years old; the discrepancy between 4.6 years and 22.7 years represents the difference between being released in time to attend her youngest child's eighth birthday, or twenty-sixth birthday.

The letter from the board also informed Sothman of the minimum term of incarceration that she would serve if she were granted a discretionary release: "Depending on behavior in prison, one could serve as little as 30% or as much as 100% of their sentence." Thirty percent of 50 years is 15 years. That's still more than triple the "average" that her lawyer told her to expect when she entered her guilty plea.

The majority, for reasons unclear, applies the thirty-percent figure stated in the letter not to the actual sentence (50 years) but to a 50-year sentence after applying the maximum earned-time credits for which an inmate is eligible (22.7

years). This seems to me a misreading. The letter doesn't say that the percentages apply to an inmate's sentence "after crediting earned deductions for good time." And taking the other percentage referenced in the same line, I certainly don't read the board's statement that "[d]epending on behavior in prison, one could serve . . . as much as 100% of their sentence" to mean that serving "100%" equates to 22.7 years—particularly since good-time credits themselves depend on behavior in prison. None of the parties suggest this interpretation either. The majority's resulting calculation that Sothman's best-case scenario is really 6.81 years appears wrong, and thus the conclusion we're invited to draw from it—that maybe the advice wasn't *too* far off—is likewise wrong.

The majority recites several times that Sothman's lawyer relied on the Legislative Services Agency (LSA) fiscal note that showed the average as 4.6 years, as if that might resolve the question of whether the lawyer breached his duty to Sothman. As an initial matter, we have never taken judicial notice of the accuracy of LSA fiscal notes. But more importantly, the question isn't whether the lawyer acted in good faith or tried hard. In this situation, we instead must look to whether the lawyer in fact provided accurate information on this critical issue. "The erroneous advice of legal counsel, standing alone, would be sufficient to establish the first prong of the *Strickland* test—the deficiency of legal counsel's performance." *Howard v. State,* 783 S.W.2d 61, 62 (Ark. 1990). In this case, the information provided, regardless of its source, was materially erroneous. Whether the lawyer accurately relayed inaccurate information to his client

doesn't change the fact that the inaccurate advice itself caused Sothman to enter a guilty plea that was not "voluntary and knowing."

Further, and equally problematic, her lawyer consistently downplayed her likelihood of serving more than the average length of incarceration and exaggerated her likelihood of being quickly paroled. So not only was Sothman led to believe an incorrect average for the length of time defendants serve for her crime, she was led to believe that she stood a good chance of being released on a time frame likely to beat the average.

It's true, as the majority notes, that besides the misstatement of the average length of incarceration, her lawyer otherwise never directly misstated the details of her sentence or parole. The lawyer told Sothman that there were "no guarantees" on any parole request and that "the ultimate decision is out of your hands." But we must consider a lawyer's statements in their full context when determining whether a client was materially misled. A statement made, but then immediately clarified or appended, alters its meaning and thus may create a different impression on its recipient. In this case, whenever the lawyer stated the penal consequences of her guilty plea, he instantly followed the statement with a reassuring clarification that Sothman would be eligible for parole *immediately*:

> There is no mandatory minimum sentence of any kind on this charge. . . . At the time of sentencing, the parties will request a joint recommendation for imposition of a prison sentence not to exceed 50 years. You would be immediately eligible for parole, and the State is in agreement that we can file a Motion to Reconsider your sentence.

-*Lawyer's letter to Sothman,* dated July 29, 2016.

If you accept the plea offer provided, you will receive a 50 year sentence, but be eligible for immediate parole.[6]

 *-Lawyer's letter to Sothman*, dated August 2, 2016.

As we've discussed, the sentence to be imposed would be a 50 year sentence, on which you would be elgible for immediate parole.

 *-Lawyer's letter to Sothman*, dated August 9, 2016.

As you know, you plead[ed] guilty to Child Endangerment Resulting in Death, which is punishable by a penalty of up to 50 years of incarceration in prison. We've also discussed that typical individuals, pursuant to a Legislative Services Study, serve on average 4.6 years on this type of sentence. There is no minimum sentence and you are eligible for parole immediately upon your sentencing.

 *-Lawyer's letter to Sothman*, dated August 16, 2016.

Yes, her lawyer correctly stated that the court would impose a fifty-year sentence and made no guarantee of any outcome. But to conjoin each such statement with a separate assurance of eligibility for "immediate parole" communicated to Sothman that she should reasonably *expect* an outcome at least within the range of an immediate parole. "[F]or the purposes of determining whether a guilty plea was involuntary due to confusion over the plea agreement," we have said that "the important inquiry is what the defendant, not the defense attorney, understood." *Philo,* 697 N.W.2d. at 489.

In *Strader v. Garrison,* the United States Court of Appeals for the Fourth Circuit found that a defendant "grossly misinformed" about parole eligibility dates by his lawyer had been deprived of the effective assistance of counsel. 611

---

[6]Use of the conjunction "but" illustrates the point perfectly: "but" is "used to introduce something contrasting with what has already been mentioned." *But, New Oxford American Dictionary* 238 (3d ed. 2010).

F.2d 61, 65 (4th Cir. 1979). "When the erroneous advice induces the plea, permitting him to start over again is the imperative remedy for the constitutional deprivation." *Id.* Similarly, in *Beavers v. Saffle*, the Tenth Circuit Court of Appeals stated that "attorney advice which misrepresents the date of parole eligibility by several years can be objectively unreasonable" and thus "may be sufficient to meet the prejudice requirement." 216 F.3d 918, 925 (10th Cir. 2000).

Although an attorney is not required to provide any advice about parole, "that does not leave a court, or an attorney, free to misinform a defendant regarding collateral consequences of his plea." *Meier v. State*, 337 N.W.2d 204, 207 (Iowa 1983) (en banc). When a defendant "has been affirmatively *mis*led by an attorney concerning the consequences of a plea," we have said that "the plea may be held to be invalid." *Mott v. State*, 407 N.W.2d 581, 583 (Iowa 1987), *abrogation on other grounds recognized by Perez v. State*, 816 N.W.2d 354, 360 (Iowa 2012). Similarly, when "the misinformation is of substantial importance to the defendant and is considered by him in deciding to plead guilty," the plea is likewise "involuntarily and invalid." *Saadiq*, 387 N.W.2d at 324. In creating the mistaken expectation about the consequences of her plea that Sothman then reasonably relied on, the lawyer breached an essential duty to his client. Sothman established the first requirement of our ineffective-assistance-of-counsel analysis.

C.

The second requirement—"prejudice"—involves a "but-for" inquiry: Is there a reasonable probability that but for the lawyer's failure, the proceeding would have had a different result? *State v. Taylor*, 689 N.W.2d 116, 134 (Iowa 2004). The majority cites several grounds to support its determination that Sothman failed to show prejudice.

The majority first relies on the district court's finding that Sothman failed to state that she would have insisted on taking the case "to trial." Here's the testimony that the majority finds lacking:

> Q. If you had known what you were truly facing, would you have accepted the plea agreement?
>
> A. No.

True, Sothman didn't say, "I would not have accepted the plea agreement and would have proceeded to trial." But by not accepting the plea agreement, Sothman *by necessity* brings into play proceeding to trial. There was no other plea offer on the table. At that time, she faced a binary decision. Sothman's lawyer testified that he discussed with Sothman the fact that unwinding her guilty plea involved the possibility of going to trial.

Equally important, requiring defendants to recite certain magic words ("I would have gone to trial") risks missing the key inquiry of the prejudice determination: Would the proceeding have had a different outcome? It was enough for Sothman to testify that she would have withdrawn her plea and thus necessarily continued litigating the charges toward a different outcome—

including, yes, a possible trial—if her lawyer had presented accurate information. *See Diaz v. State*, 896 N.W.2d 723, 733–34 (Iowa 2017).

The majority finds not only a failure by Sothman to recite the magic words but also that Sothman indeed would not have gone to trial in any event because she wished to avoid putting herself and her family through a public trial and because she wished to reunite her other two children with their father as soon as possible. (The children had been placed in emergency foster care with her husband's sister, and although they could have supervised visits with the children, apparently the Department of Human Services forbade the children from living at home until Sothman left to start her sentence.) Yet Sothman's testimony and actions make clear that her primary concern in plea-bargaining was simple: to find the fastest path to her own return home to raise her two young children. She testified:

> Q. Why did you agree to take the deal?
>
> A. Because it was going to be the fastest way to get me home. We had already lost one member of the family. I just wanted to put the rest of it back together. At the time this appeared to be the easiest way to do that.

Her initial plea occurred at a time when all parties—her lawyer, the prosecutor, and even the judge—believed that Sothman would be eligible for resentencing six months after she pleaded guilty and started her incarceration. When the parties later realized this expedited release tactic was unavailable (because the crime to which she agreed to plead guilty was a forcible felony), Sothman agreed to leave her guilty plea undisturbed. But she did so based on the understanding that (1) the State after just six months would submit a letter

to the parole board on her behalf recommending release, (2) the average period of incarceration for her crime was 4.6 years, (3) she was eligible for "immediate parole," and (4) she was an "excellent candidate" (according to her lawyer) for parole.

The majority's counterfactual doesn't account at all for what drove the plea negotiations from the start: how long she should expect to be imprisoned. None of the many letters from her lawyer quoted above—all of which discuss her sentence and eligibility for parole—mention the issues that the majority relies on (avoiding the trauma of trial or reuniting her children with her husband) as in any fashion propelling her decision. These considerations were raised only in response to direct questions about them on cross-examination at her postconviction relief hearing and at best serve as secondary considerations to the length-of-incarceration concern.

The majority next suggests that Sothman cannot show prejudice because "she had no realistic defense to her crime of conviction." Viewed from this angle, Sothman's lawyer presumably could *never* be ineffective because Sothman never had a chance at acquittal. The court seemingly adopts a harmless error standard by precognition, without any trial conducted, any prosecution presented, any evidentiary challenges made, and any defenses advanced. Suffice it to say that conjecture about the outcome of a jury trial that never came close to taking place—Sothman pleaded guilty even before formal charges were filed—provides awfully wispy smoke signals from which to decipher whether prejudice is lacking.

But more importantly, it's not the defendant's burden to show a reasonable probability of an *acquittal* at trial. The law doesn't require certainty of a successful result, or anything close to it, for Sothman to prove prejudice from her lawyer's mistake. Our cases have analyzed the necessary showing through multiples lenses. In *State v. Taylor*, we stated that the defendant need only prove "a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 689 N.W.2d at 134 (emphasis added) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). More recently, in *Diaz v. State*, we stated that the defendant needed to show that a decision to reject the plea bargain "would have been *a rational choice*" under the circumstances. 896 N.W.2d at 723–33 (emphasis added) (citing *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

Both inquiries, related as they are, lead to the same answer. Sothman demonstrated a "reasonable probability" of a different outcome since, as discussed, she would not have pleaded guilty (had her lawyer provided accurate information about her parole) and the only other option on the table was trial. She likewise has demonstrated that rejecting the plea would have been a "rational" decision. A defendant may be prejudiced, even if she lacks a legal or factual defense to the crime, when it would be rational for her to "decide to 'roll the dice' if presented with a plea deal certain to be almost as damaging as a loss at trial." *Id.* That's precisely the situation in this case; even the State at oral argument conceded that Sothman's plea agreement left her with the exact same punishment that she would have received had she gone to trial and lost.

Finally, the majority suggests that she wasn't prejudiced because she would have taken the plea in any event to avoid a first-degree murder or other heightened charge. Sothman, for her part, testified that the threat of other charges played no role in her decision, which I believe the record bears out. It's also extremely difficult to square the prosecutor's willingness to agree to reconsideration of Sothman's sentence after only six months (as agreed under the initial plea deal) or to write a letter recommending parole after six months (as agreed under the revised plea deal) if the prosecution actually believed Sothman guilty of murder. At Sothman's sentencing, the prosecutor characterized her conduct as involving "inaction, indecision, or mistakes." The prosecutor's letter to the parole board similarly framed the conduct as "a lapse in judgment" and opined: "The loss of her child was clearly the harshest punishment that could be imposed. Having Ms. Sothman serve a number of years of incarceration will punish her no more than the punishment she has already suffered." These are not the words of a prosecutor intent on pursuing more severe charges with more severe punishments. The majority suggests that this might not mean much since, having agreed to this plea bargain, the prosecutor was "obligated" to advocate for its acceptance. But certainly the prosecutor is not obligated to make misrepresentations to sell the plea to the court; indeed, he's ethically- and duty-bound to the contrary.

In *Garmon v. Lockhart,* the Eighth Circuit Court of Appeals held that a defendant whose counsel had erroneously informed him that he would have to serve only one-sixth of his plea bargain sentence was denied the effective

assistance of counsel. 938 F.2d 120, 122 (8th Cir. 1991). The state argued that the defendant's guilty plea was driven by the threat of a significantly longer prison term than the plea bargain provided for. *Id.* at 121. But the defendant testified that he pleaded guilty because his lawyer led him to believe that he would be paroled in five years, which would allow him "to get out [of prison] and be a father to [his infant son]." *Id.* (alterations in original). His lawyer acknowledged the same fact, stating that the defendant wanted to get out of prison before the son was "a grown man." *Id.* The court found that, absent the lawyer's erroneous advice about the defendant's parole eligibility, the defendant would not have pleaded guilty and gone to trial. *Id.* at 121–22. The court thus held that the lawyer's breach affected the outcome of the plea process and established prejudice. *Id.*

In *Diaz*, we found that a defendant whose lawyer breached a duty in advising his client about the collateral consequences of a guilty plea (in that case, related to deportation consequences) had proved prejudice in circumstances with potential results remarkably similarly to this case:

> By pleading guilty, he all but guaranteed he would never be physically present in [his young daughter's] life to help her grow. If he had not pled guilty, he could have defended himself at trial. He could have asserted various evidentiary issues and challenged the State's ability to prove all elements of the charge. He could have hoped for a better plea bargain by holding out for a plea of guilty to [another charge]. Finally, he could have otherwise rationally decided to hold the State to its burden of proof.

*Diaz,* 896 N.W.2d at 734 (citations omitted).

Taken individually or collectively, the majority's grounds for finding a lack of prejudice fail. Sothman, to the contrary, has shown prejudice under our

caselaw. Having proved both her lawyer's breach of an essential duty and that she was prejudiced by the breach, Sothman has established her claim for ineffective assistance of counsel. Because I believe that Sothman establishes a right to relief on this ground, I will not address her other ineffective-assistance argument.

II.

In 2017, the board denied Sothman's first parole request. In an explanatory letter, the board stated that "[t]he seriousness of your crime or your criminal history suggests to the Board you have not yet served enough time to warrant an early release." Sothman received the same denial, with the exact same explanation, in 2018. And again in 2019. (That's as recent as our record goes on the parole denial documents.) Sothman remains incarcerated. She has already surpassed in prison the 4.6 years that she'd been led to believe before pleading guilty was the average length of time she would serve.

"Duration of incarceration unquestionably goes to the very heart of voluntariness required for a valid waiver of a defendant's right to trial on the charge alleged, as well as the voluntariness of a defendant's waiver of the other rights to be accorded . . . ." *State v. White*, 587 N.W.2d 240, 246 (Iowa 1998) (en banc) (quoting *State v. Irish*, 394 N.W.2d 879, 844 (Neb. 1986) (Shanahan, J., dissenting)). Estimates suggest that ninety-five percent of criminal convictions are based on guilty pleas, most of which result from plea bargains. *See* William Ortman, *When Plea Bargaining Became Normal*, 100 B.U. L. Rev. 1437, 1437 (2020). No less an authority than the United States Supreme Court has declared

that plea-bargaining "*is* the criminal justice system." *Missouri v. Frye,* 566 U.S. 134, 144 (2012) (quoting Robert E. Scott & William J. Stuntz, *Plea Bargaining as Contract,* 101 Yale L.J. 1909, 1912 (1992)).

Our criminal justice system has produced in this case, and is likely to again to produce, a conviction based on incorrect legal advice about eligibility for parole that caused a defendant to voluntarily relinquish fundamental constitutional rights. Approval of it, after all that we've said about the enduring requirement of "voluntary and knowing" guilty pleas, makes our lofty pronouncements sound more than a little insincere. I would vacate the guilty plea, consummated as it was with gravely inaccurate information. Permitting her to start over again is the required remedy for this deprivation of her constitutional rights.

Appel, J., joins this dissent.